CASES IN THE SUPREME COURT*

PAIN
vs.
PLICQUE AND                       PAIN vs. PLICQUE & LE BEAU.
LE BEAU.

APPEAL FROM THE COURT OF THE FIFTH JUDICIAL DISTRICT, THE
JUDGE OF THE SEVENTH PRESIDING.

A notarial act, which is not *signed* by the party to it *in the presence* of the
subscribing witnesses, making a renunciation of certain rights and
mortgages, is not authentic, and will not bind the party thus signing it.

An instrument offered as a notarial or authentic act, which proves to be
incomplete as such, cannot be received as a private act between the
parties, when the original is not produced.

The notary who fails to receive and pass a public act, according to the
provisions and formalities of law, is guilty of misconduct in office.

This suit commenced by injunction. The plaintiff,
Française Pain, wife of Ursin Perret, alleges that she has
instituted suit against her husband, for a separation of pro-
perty, in which she claims as her individual and separate
property, by inheritance from her father and mother, slaves
on the plantation and now in the possession of her said
husband, together with a large sum of money due from him,
and that she has a mortgage on all the property in his
possession for the restitution of her paraphernal effects.

The plaintiff further alleges, that the defendants, Plicque
& Le Beau, merchants, residing in New-Orleans, well know-
ing the nature of her claims, have caused to be issued an
order of seizure and sale against said plantation and slaves,
for a debt of her husband, amounting to the sum of fifty-five
thousand dollars, which the sheriff of the parish of St. Mary
is now about to execute.

She further shows, that said proceedings have been
instituted in virtue of a certain act, purporting to be an
authentic act of mortgage, executed before Felix de Armas,
Esq. notary public in the city of New-Orleans, *and two
witnesses*, to which her name and that of her husband appears
as a party thereto. But she expressly alleges, that said act

is not authentic, nor was it executed or signed by herself and husband *in the presence of two witnesses,* as it purports on its face; that she was induced by fraud, surprise and deception, on the part of Plicque & Le Beau, to sign said act.

WESTERN DIST.
September, 1836.

PAIN
vs.
PLICQUE AND
LE BEAU.

She expressly alleges, that on the day said act purports to' have been executed, her husband and herself were invited to dine with the family of Mr. Le Beau, who resided over the counting room of Plicque & Le Beau, in the city of New-Orleans, and that a short time before dinner she and her husband were invited by one of the firm to descend into the counting room, where she found the doors closed and candles burning; and the persons present, as well as she recollects, were Felix De Armas, the notary, Plicque & Le Beau, and her husband. An act was produced, which she alleges was the one on which these proceedings were instituted, which was signed by her husband, and she was requested to sign it likewise, and did so, without hearing it read or knowing its contents, being assured it would not turn to her prejudice; that she retired as soon as she signed, and did not see the persons whose names appear as witnesses.

She further alleges, that on examining said act, she finds many gross falsehoods and misrepresentation of facts; and among others, it is stated that the sum of fifty thousand dollars, for which this mortgage is drawn and given to secure payment, was money advanced for the price of the plantation on which they reside, and many of the slaves. She avers that said plantation was paid for from the funds received by her husband as the proceeds of sales of her own separate property, and which had been placed by her husband in the hands of Plicque & Le Beau. She expressly alleges, that by signing said act of mortgage, she never intended to renounce any privilege or mortgage she had on said property; that she was not informed that she had done so by the notary, as stated in the act, nor did she, knowingly, make any such renunciation; nor did she declare, as stated in the act, that if she should claim her rights, in opposition to such a renunciation, she should not be listened to in a court of

39

WESTERN DIST.
September, 1836.

PAIN
vs.
PLICQUE AND
LE BEAU.

justice, and no oath to that effect was administered, as is also falsely set forth in said act.

She further states, that the obligations stipulated in said act, as far as she is concerned, are null and void; *First*, because she never, knowingly, consented to them ; *Second*, because her signature was obtained through fraud, surprise and the deception of Plicque & Le Beau ; *Third*, she was not permitted by law to contract, either directly or indirectly, for her husband ; and as the obligations resulting from the renunciation have this effect, said act is null and void.

The plaintiff prays, that Plicque & Le Beau be enjoined from further proceedings, under said order of seizure and sale, and that it be quashed and set aside, and that the said act of mortgage be forever cancelled and annulled.

The defendants pleaded a general denial, and averred, that the allegations in the petition are false and unfounded. They further state, that the said act of mortgage is valid and binding on the parties to it; that the renunciations and stipulations in said act are such as married women are permitted to make, and especially the stipulations and renunciations relative to the alienation of paraphernal pro-' perty and of the right of mortgage. They pray that the injunction be dissolved, with damages and costs.

In an amended answer, they aver, the plaintiff ratified the acts of mortgage, by consenting to the sale of many of the slaves mentioned in it.

The case was tried before the court on these pleadings and issues.

The mortgage upon which the proceedings were commenced in the *via executiva* embraced the plantation and all the slaves of the husband and wife, in Attakapas, and contained the following stipulations and clauses, viz. :

This act, passed before Felix De Armas, notary public in and for the city of New-Orleans, and two witnesses, the 5th of April, 1831, in which Ursin Perret and wife acknowledge themselves indebted, *in solido*, to Plicque & Le Beau in the sum of eighty thousand dollars, which they declare they have employed in part payment of the land forming their

plantation (as afterwards specified) and in the payment in
cash of a great part of the appurtenances, and for the purpose
of putting it in perfect order as a sugar plantation. Perret
and wife bind themselves, *in solido*, to reimburse that sum to
Plicque & Le Beau, or to their order, in all the month of
March, 1832. In order to facilitate Plicque & Le Beau in
negociating this debt, they make and subscribe fourteen
promissory notes, payable as above, at the counting house of
Plicque & Le Beau, in New-Orleans, to the order of Pajot
Perret, and by him endorsed in blank, amounting to the
aggregate sum of eighty thousand dollars, which notes are
*paraphed* by the notary to secure the faithful payment of that
sum, and an eventual interest of ten per cent., as agreed
between the parties, upon such of the notes as shall not be
paid at maturity. Perret and wife bind themselves, *in solido*,
to insure the payment and reimbursement of all such
expenses, fees, and other disbursements of any nature, which
may be incurred by Plicque & Le Beau, and to secure pay-
ment, as well interest as capital, mortgage and hypothecate
the plantation and slaves specified therein. The property is
declared to belong to Perret and wife, who agree not to
alienate the same to the prejudice of this mortgage. In case
of non-payment of said sum, Perret and wife authorize
Plicque & Le Beau to sell, in whole or in part, the mort-
gaged property, under such clauses and conditions, and in
such manner and form as they may think proper, in order to
pay themselves; which special power, thus given, they
declare irrevocable, except by the consent of Plicque & Le
Beau. Madame Perret, still assisted and authorized by her
husband, having declared to the notary that it was her
intention to renounce the mortgages, privileges and other
rights which she has or may have upon the mortgaged
property, in order, that in case of non-payment, in whole or
in part, of said sum or notes for eighty thousand dollars, the
said property was to pass, free of any right to be established
in her behalf, either in the hands of Plicque & Le Beau, if
they should become purchasers themselves, in virtue of the
special power hereby conferred, which power is declared to

WESTERN DIST. extend to that, or in the hands of any other person. The
September, 1836. said notary informed her, that according to the laws of the
state, the wife has a tacit mortgage on the immovable
property of her husband:

PAIN
*vs.*
PLICQUE AND
LE BEAU.

*First.* For the restoration of her dower, or for replacing
her dotal effects which she brought in at the time of the
marriage.

*Second.* For the restitution or replacing her property,
acquired during marriage, by succession or donation.

*Third.* To indemnify her for her debts contracted with her
husband, as well as for the replacing her own proper effects.

*Fourth.* As security for the obligations of her husband, in
case he has enjoyed the paraphernal property of the wife, or
to reimburse the price, in case of alienation by the wife, with
the consent of the husband, and of which he had received
and profited by the price, which rights cannot be alienated
without a special renunciation: said Madame Perret acknow-
ledging herself perfectly informed of the rights which the
law accords her upon the property of her husband, declared
that she persisted in her intention, and that, of her free will,
she formally renounces, as well for herself as for her heirs,
etc., all tacit and legal mortgages which the law accords to
her upon the aforesaid property whatever, arising from dotal
or paraphernal rights, and that she transfers and conveys to
Plicque and Le Beau all her said rights and others of every
nature whatever, subrogating them in her rights and
actions, etc.

She further declares, if, notwithstanding this formal
renunciation, she should ever claim against its effects, she
desires not to be listened to in courts of justice, and, under
this protestation, she took an oath before the notary, and
under oath declared, that she had not been intimidated,
persuaded, nor coerced by her husband, nor by any other
person, but, on the contrary, that she subscribes it freely and
spontaneously, considering that the moving cause, which
induced her to sign, is, that the contract cannot fail to turn
to her advantage; and for greater security for the execution
of this contract, she further swears to observe it, in all its

forms and tenor, notwithstanding any *dispensation* which may be accorded to her.

WESTERN DIST.
*September*, 1836.

PAIN
*vs.*
PLICQUE AND
LE BEAU.

This act was made and passed in New-Orleans, at the office of the notary, in the presence of Felix Percy and Jules Mossy, competent witnesses, who signed with the parties and the notary, after reading it. Signed by Ursin and Madame Perret and the other party, and by Felix De Armas, notary public.

The testimony of the notary who drew the act of mortgage was taken on commission, and read as follows:

F. De Armas, notary public, says, the act of mortgage was written at the request of Mr. F. N. Plicque, one of the defendants; that it was signed by the plaintiff, (Française Pain,) at the counting house of Plicque and Le Beau, about three o'clock, P. M.; that the two subscribing witnesses to the said act, were, at the time of its execution, employed in witness's office; that they were present at the *passing* of said act, but witness thinks, and is certain that they were not present at the *signing* of it by the plaintiff; that F. Nuna Plicque was present when the plaintiff signed it, but, he cannot say what persons were present when the subscribing witnesses signed it, and does not recollect what persons were present when the plaintiff consented to the passing of said act.

Witness says, the plaintiff was, previously to the drawing of said act, apprized by him, as notary, of the consequences of signing said act, but she insisted on its execution. He further states, that the plaintiff did not give him any instructions as to the stipulations or renunciations which the act was to contain, but that he received them from Mr. F. N. Plicque and from U. Perret, her husband, and had orders to draw the act in the manner which he should deem proper and binding on the parties. He further states, that he prepared the act at the request of Plicque and Perret, and nobody else; that the conditions under which the said act was to be executed were given to him by Plicque & Le Beau, but they left to him the manner of drawing it up, so as to render it obligatory; that he read to the plaintiff, in a clear and distinct voice, as respects the obligations by her taken and

WESTERN DIST.
September, 1836.

PAIN
vs.
PLICQUE AND
LE BEAU.

the renunciations to be made by her, but he believes that he did not read the names of all the slaves and the description of the plantation, but only stated to the plaintiff the objects contemplated were the slaves and plantation belonging to her and her husband. He did not think it expedient to read the act through to the plaintiff, because she and Plicque told him it was unnecessary, they being both informed of its contents; that the glass doors of Plicque & Le Beau's counting house were closed at the moment he went in, for fear of being interrupted; that the back part of the room being very dark, two candles were furnished; that the husband was not present when plaintiff signed the act; witness examined her apart from her husband, touching said act, and particularly at the time of signing it. He was informed by Plicque and by Perret, the husband, that the debt acknowledged in the act was due to the defendants by Perret, for slaves and land by them paid for, and for which Ursin Perret had given his notes, which land and slaves formed a part of the plantation and slaves mortgaged in said act; *understood* from Plicque and U. Perret that no part of the property mortgaged belonged to the plaintiff, but to the community existing between the plaintiff and her husband; that the signature of plaintiff to said act was not considered by witness as rendering her responsible for the payment of the debt, but only taking her legal renunciation to her rights upon said property.

Witness states, that Plicque told him that the sum of money loaned previously belonged to absent persons; that the said money had been, for a long period of time, yielding interest yearly; that Perret was not to be considered as an active partner, and for this reason, and also, for the better securing of the rights of the persons who had confided to his partnership said rights, he had determined to ask for a mortgage.

Witness states, that plaintiff was not sworn, as stated in the said act, nor before any other person, &c.; that in the act it was stated that she was sworn, because witness believed that her signature to the said act obligated her as

WESTERN DIST.

September, 1836.

PAIN
vs.
PLICQUE AND
LE BEAU.

.effectually as her oath ; that there was no attorney appointed in the case, and that the statement of said oath, put in the act, was not at the special instance and request of one or both of the defendants, but that the binding clauses were left with the witness to insert.

Witness says, Plìcque told him how much the interests of their constituents were exposed, in default of a mortgage, because Ursin Perret owed them a considerable sum of money, and that, in case of his death, his wife had large claims for her dowry, or other privileged rights ; that witness, after receiving the said memorandum to draw said act, told Perret that he considered the plaintiff, (wife of Perret) *if she signed the act, as ruined !* But Plicque, from what Perret had told him and witness, informed the latter that he was persuaded that Perret could meet his payments ; that, at all events, plaintiff was so much attached to her husband that she would submit to the consequences.

The depositions of Felix Percy and Jules Mossy, who signed the act of mortgage as witnesses, were also read. They testified they never saw the plaintiff, (Madame Perret,) sign the act of mortgage, but that they affixed their names as witnesses after it was brought to Mr. De Armas' office. They do not know where the act of mortgage was signed by the parties. Neither of them ever saw the plaintiff, and were both unacquainted with her signature.

The district judge was of opinion that the renunciations of the plaintiff, contained in the act of mortgage, were null and void. Judgment was rendered perpetuating the injunction, and that the said act so far as regards the plaintiff, be cancelled and annulled, and the order of seizure and sale quashed and set aside. The defendants appealed.

*Brownson* and *Lewis*, for the plaintiff.

1. The act of mortgage in this case comprised the plantation, as well as all the slaves, both those which were the property of the husband, and thirty or forty which were the separate property of the wife. It was dated the 5th April, 1831. Subsequently and before suing out this order

WESTERN DIST. of seizure, the defendants sold all Perret's slaves, and realized
September, 1836. thirty-four thousand two hundred and ninety dollars, which
left fifty-five thousand dollars of the mortgage debts still
unpaid. They were proceeding to sell the remainder, and
thus take the last vestage of the wife's property to pay the
husband's debts.

PAIN
*vs.*
PLICQUE AND
LE BEAU.

2. This mortgage is void, so far as regards the wife,
because she cannot bind herself *in solido* with her husband,
and as surety for the payment of his debts; nor can she bind
herself jointly with him, unless it be shown that the contract
turned to her benefit or advantage; and receiving the money
contracted for, is not evidence of such advantage or benefit.
*Louisiana Code,* 2412. 7 *Martin, N. S.,* 65 and 487. 5
*Ibid.,* 431. 4 *Ibid.,* 389.

3. The act is null and void as regards the wife, because
it wants the formalities and some of the requisites to become
an authentic act. It was not signed in the presence of the
witnesses. The want of these formalities may be shown by
parole testimony. 8 *Martin, N. S.,* 693. *Louisiana Code,*
2231. 1 *Martin,* 294.

4. The renunciation by the wife of her right of mortgage,
is null, because it is an indirect mode of becoming surety for
a debt of her husband, by ceding her rights and property to
secure and make payment of her husband's debts. 7 *Martin,*
*N. S.,* 343. 5 *Ibid.,* 54.

5. The renunciation of the wife is without effect. The
mortgage and renunciation of the wife, to give effect to it,
are obligations accessory to the principal obligation, which
was to pay the debt. And if the principal obligation be
void, the accessory must fall with it. 4 *Louisiana Reports,*
326. *Louisiana Code,* 3245, 3251, 3252.

6. The principles decided in the case of Tremé *vs.* Lanaux,
4 Martin, N. S., 230, relied on by the defendants, are not
irreconcilable with those which we contend should govern
this case. In that case the wife did not bind herself for her
husband; but only postponed her mortgage on the commu-
nity property, to enable her husband to raise money on notes
endorsed by the mortgagee. In this the wife is bound *in*

*solido* with her husband, and grants a mortgage on her own individual property, and renounces her legal mortgage to secure the principal obligation.

*Simon,* for the defendants. .

1. This case involves the marital rights of the plaintiff, as wife of Ursin Perret. They were married in May, 1816; consequently the laws existing at that time must govern, and not those subsequently passed, in relation to the real rights of the spouses, and their contracts or acts passed concerning those rights. A hypothecary alienation, or a renunciation to a mortgage on the part of the wife, are contracts made in relation to her real rights. Marriage is a civil contract. Laws prescribe for the future, and have no retroactive effect. *Louisiana Code, article* 87. *Ibid.* 8.

2. In France it is established that the provisions of the Napoleon Code, do not govern the pecuniary rights of persons married previous to its enactment. *Merlin's Repertoire, verbo Puissance Maritale, section* 2, *article* 2, *No.* 19. *Questions du Droit, verbo Regime Dotal, section* 1, *No.* 1. *Ibid. Villeien, section* 3, *page* 361. *Grenier Hypothèque, vol.* 1, *Nos.* 239, 261. *Sirey, Code annoté, or article* 1554, *Nos.* 1 *and* 27. *Paillet, or article* 2d *of Napoleon Code. Duranton, vol.* 1, *No.* 52. *Merlin's Questions du Droit, vol.* 5. *Verbo Regime Dotal, section* 2. *Dalloz, vol.* 20, *page* 129, *and following Nos.* 12, 13, '14, 15 *and* 17. *Sirey, vol.* 7. *Part.* 2, *page* 348. *Ibid., vol.* 9, 2, 327. *Ibid.,* 1832, 2, 156, 1833, 2, 489. 8 *Martin, N. S.,* 192.

3. When capacity to contract is once acquired under a law, no subsequent law can take it away. It is different, when on the contrary a new law gives capacity.

4. Under the existing laws in force at the time of the plaintiff's marriage, she could have validly renounced to her *priority* of mortgage, in favor of a third person, and even a creditor of her husband. *Partida* 3, *title* 18, *law* 58. Such a renunciation was not an act of suretyship; it is, therefore, binding in this case. 4 *Martin, N. S.,* 230, 629.

5. Under the new code itself, supposing it should govern

40

WESTERN DIST.
September, 1836.

PAIN
vs.
PLICQUE AND
LE BEAU.

the present case, nothing prevents the wife to renounce to her mortgage or *priority of mortgage* in favor of a third person, and she does not thereby become security for her husband. The right of mortgage, as claimed by plaintiff in this case, is a right specially established by law in favor of married women, and under the 11th article of the Louisiana Code ; such rights or privileges can be renounced by the individuals for whose benefit such loans were made. In this case, all the property of the wife, all her rights against her husband, are paraphernal. Cannot she dispose of her paraphernal property ? She undoubtedly can, with the consent of her husband. *Louisiana Code, article* 2367. With his consent, she is even permitted to dispose of her property gratuitously. *Ibid.*, 1467. But, it will be said, that when she alienates her property for the benefit of, or in relation to obligations contracted by her husband, she becomes incapable, under article 2412. How does she become incapable ? Are not married women capable of contracting, unless specially declared incapable by law, and are there no means of removing the incapacity of the wife ? *Ibid.*, articles 1775, 1779, 1784. This last article shows the incapacity of the wife only in relation to her becoming *security* for her husband. Well, in this case, do we consider her as security ; did she become in any way obligated to the defendant ? Do we seek to enforce any contract of suretyship ? What is the definition of suretyship ? *Ibid.*, article 3004. Can it be said that she is without this definition ? No ; the only obligation that we seek to enforce against her is an obligation *not to do*, and not an obligation to pay us any thing, either for herself or for another. The stipulation contained in the act of mortgage is nothing but an alienation of her paraphernal rights, so far as they may be conflicting with the rights of the defendant ; it is a simple renunciation to her *priority of mortgage*, and this is certainly warranted by law. The ancient laws of the land, under which the case of Tremé *vs.* Lanaux, 4 Martin, N. S. 230, was decided, were as severe as the new ones in relation to engagements of married women for their husbands, (2 Martin, N. S. 39. 5 Ibid., 431. 7 Ibid., 252. 8

WESTERN DIST.
*September*, 1836.

PAIN
*vs.*
PLICQUE AND
LE BEAU.

Ibid., 415) and still this court has repeatedly maintained such renunciations as the one in question.

6. It has been said, that the act attacked in this suit contains an obligation, *in solido,* by which the wife obligated herself to pay the sum due to defendants.   Defendants do not contend that said obligation is binding on her, nor do they seek to enforce it.   The *renunciation* of Mrs. Perret is the only stipulation which they rely upon, and this is very distinct from the obligation *in solido.*   The act may be bad for one purpose and good as to the other ; the stipulations and obligations contained in the act are not so connected together that one cannot exist without the other ; on the contrary, they are entirely *distinct,* and if we set aside the obligation, *in solido,* still the renunciation to her priority of mortgage will remain, and ought to have its full effect.   4 *Louisiana Reports,* 423.

7. But it has been further said, that the renunciation of the wife to her right of mortgage is a derogation from the laws made for the preservation of *public order* and *good morals.*   Plaintiff's counsel, in support of this position, has relied on 1 Toullier, 87 ; let me refer the learned gentlemen to the same work, No. 111, pages 91 and 92 ; Duranton, vol. 1, No. 110.   I do not see in what manner public order and good morals may be in the least connected with, or affected by the renunciation made by a married woman to her priority of mortgage, nor in what way such renunciation can be contrary to the public good.   *Est regula juris antiqui omnes licentiam habere, his quæ* PRO SE *introducta sunt renuntiare.   L.* 29, *Code de Practis.*   The right of legal mortgage is established for the special benefit of the wife ; and again, under the article 11th of the Louisiana Code, she may renounce to the laws made for her exclusive benefit and protection.

8. The wife, under the old and new codes, may alienate her paraphernal rights and property, with the consent of her husband ; why, again, could she not renounce to the mortgage that secures those rights ?   Can she do more and not less.   *Persil Regime Hypoth. vol.* 1, *pages* 305–6, *on article*

HARVARD LAW SCHOOL LIBRARY

WESTERN DIST. 2121. *Ibid.*, 468, *article* 2144. 12 *Toullier, No.* 13. *Volume*
September, 1836. 14, *No.* 174.

PAIN
*vs.*
PLICQUE AND
LE BEAU.

9. As to the formalities of the act, it has been said that the act in which the renunciation is contained is *not a public act,* but only *an act under private signature.* I contend, that the formalities of an act are to be governed by the laws existing at the time it is passed. In 1831 the law did not require that an act of mortgage, or of renunciation to a mortgage, should be made by an authentic act; an act under private signature is sufficient. Let us suppose the act in this case not to be authentic, but only a *private signature* one, is it not a principle of law that "*the forms of acts are regulated by the laws in force at the time they are passed"?* The act under private signature has the same force between the parties as a public act. *Louisiana Code, articles* 2232, 2233, 2235 *and* 2239. All sales of immovables or slaves may be made by authentic act, or by act under private signature, (*Ibid., article* 2415) and the recording is only required with regard to third persons. *Ibid.*, 2242, 2417. The wife may then sell her *paraphernal property* by act under private signature, and, *a fortiori,* she may renounce to the mortgage that secures her *paraphernal rights,* or give a mortgage on her paraphernal estate. Authentic acts are only necessary to be passed in the cases specially required to be so by law. *Ibid.*, 2237. Exceptions are pointed out in the code, (*Ibid.*, 1523, 1010, 2384, and others) and this is not one of them.

10. The mortgage of the defendants, in this case, ought to have the preference over that of the wife, whose rights are *paraphernal* and not *dotal,* the acts constituting the pretended mortgage having never been recorded in the office of the judge of the parish of St. Mary, or any where else, and that is particularly required by the code. The mortgage of Mrs. Perret is subject to be recorded, otherwise she has no mortgage. Let us remember that her rights are *paraphernal,* and not *dotal;* (this will be conceded) a mortgage only takes place in such instances as are authorized by law. *Louisiana Code, article* 3250. No legal mortgage exists, except in the cases determined by the code. *Ibid., article*

3280. Which are the mortgages of the wife? *Ibid.*, 3287. From what day is the mortgage to take effect? *Ibid.*, 3297. The legal mortgage of the wife, with regard to her *dot* only, exists without its being· recorded. *Ibid.*, 3298. The law requires the husband to cause the acts to be recorded only with regard to the dowry or *dot*. *Ibid.*, 3303. How is a legal mortgage acquired? *Ibid.*, 3314. Legal mortgages must be recorded. *Ibid.*, 3317. The recording must be made in certain places. *Ibid.*, 3318. From the above articles, it is clear that the mortgage of the wife, to secure *her paraphernal rights*, must be recorded. Since she has the administration of her *paraphernalia*, she is presumed to have all the title papers relative thereto in her possession.

WESTERN DIST.

September, 1836.

PAIN
*vs.*
PLICQUE AND
LE BEAU.

11. In vain will it be said, that this mortgage, under the old law being called *tacit mortgage*, existed without recording, and that the new law cannot, in any way, impair the said right of mortgage. Recording is a formality which is to be complied with, to preserve the right; *l'inscription est une formalité conservative du droit d'hypothèque;* this formality, required by a new law, ought to be fulfilled, and this cannot be considered as giving a restrictive effect to the law. *Sirey, vol.* 1, 269. *Ibid., part* 1, 227. *Massé, vol.* 1, *page* 311, *No.* 191. *Ibid.*, 333, *No.* 200. *Ibid.*, 339, *No.* 206. *Ibid.*, 373, *section* 9. 3 *Martin, N. S.* 468.

*Martin, J.* delivered the opinion of the court.

The defendants are appellants from a judgment which perpetuates an injunction procured by the plaintiff, staying all the proceedings on an order of seizure and sale obtained by them, against a certain plantation and slaves mortgaged to them by the plaintiff's husband.

Her pretensions are resisted, on the ground, that she intervened in the act of mortgage, and duly renounced any claim she might have on 'said property, for the security of her dotal and paraphernal rights and effects.

The notary before whom the act of mortgage was passed, has been examined, and deposes, that the plaintiff signed the act of mortgage at the counting house of the defendants,

WESTERN DIST. *September*, 1836.

PAIN
*vs.*
PLICQUE AND
LE BEAU.

*A notarial act, which is not signed by the party to it in the presence of the subscribing witnesses, making a renunciation of certain rights and mortgages, is not authentic, and will not bind the party thus signing it.*

*An instrument offered as a notarial or authentic act, which proves to be incomplete as such, cannot be received as a private act between the parties, when the original is not produced.*

*The notary who fails to receive and pass a public act, according to the provisions and formalities of law, is guilty of misconduct in office.*

out of the presence of any witnesses, in a dark room, with the doors shut and candles lighted.

The record shows the plaintiff's claim against her husband and her legal mortgage on the premises, according to the allegations in the petition.

It is clear, that the renunciation which is opposed to the plaintiff is not legally established. The act which is said to contain it is not authentic, because her renunciation in said act was not received in the presence of two witnesses. We have not examined whether this act may be opposed to her as an act *sous seing privé*, because it was not urged ; and the District Court could not have acted on such an instrument without the production of the original ; and the absence of a bill of exceptions cannot be imputed to her, as the copy presented to the court purported to be that of a notarial act.

The flagitious candor with which the notary has admitted that he attested a fact which he knew to be false, is well calculated to give rise to very painful sensations. The people will feel alarmed, uneasy and insecure when they receive so irrefragable a proof of such misbehavior, in an officer entrusted to receive and preserve the muniments of their titles.

It is, therefore, ordered, adjudged, and decreed, that the judgment of the District Court be affirmed, with costs.

NOTE.—The following clause in the foregoing opinion of the court, was stricken out before it was read ; the judges being unable at the time to turn to the legislative enactment concerning notaries referred to.

"The dereliction of duty evinced in this officer, would have induced the court to exercise the power apparently vested in it by the legislative act of———— and speedily to remove him from office, had we not been satisfied, that the legislature in passing the act, required of us the exercise of original jurisdiction, while the constitution has expressly said, our jurisdiction is appellate only."

The act referred to was passed the 20th March, 1813, and provides, that notaries public "may be suspended by the Supreme Court until the next meeting of the legislature, whenever, after a summary inquiry before said court, it shall appear that there exists just cause of reproach against their conduct." 1 *Moreau's Digest, page* 18.