(96 South. 834)

No. 24036.

### CASERTA v. CASERTA.

(April 30, 1923. Rehearing Denied June 4, 1923.)

*(Syllabus by Editorial Staff.)*

Divorce ⬅129(16)—Evidence held sufficient to show improper relations with co-respondent.

In wife's action for divorce, evidence *held* sufficient to show the husband's improper relations with one of the co-respondents.

Appeal from Civil District Court, Parish of Orleans; Hugh C. Cage, Judge.

Action by Mrs. Daisy Selph Caserta against Walter J. Caserta. From a judgment for defendant, plaintiff appeals. Reversed, and judgment granted.

Andrew B. Booth, Jr., of New Orleans, for appellant.

Henry Mooney and Wm. J. O'Hara, both of New Orleans, for appellee.

OVERTON, J. Plaintiff brought this suit against her husband to obtain a divorce on the ground of adultery. She names as co-respondents two persons, one an unmarried woman, who is named in articles 3 and 4 of the petition, the other a married woman, named in article 5 thereof. She also alleges that there is property belonging to the community of acquêts and gains existing between herself and her husband, and she prays not only for a divorce, but for a settlement of the community, and a partition of the property belonging to it.

Defendant filed an answer in which he denies that his relations with either of the co-respondents named were illicit. He also avers that his wife publicly defamed him, to his great mortification, on two or three occasions. He prays that her demand be rejected, and that judgment be rendered in reconvention, granting him a separation from bed and board.

At the outset, we may say that a review of the evidence does not satisfy us that defendant's relations with the co-respondent named in article 5 of the petition were immoral, and hence we will dismiss from further consideration that branch of the case. In so far as respects defendant's relations with the co-respondent named in articles 3 and 4 of the petition the case is substantially as follows:

Plaintiff testifies that she left the matrimonial establishment in September, 1916, because of cruel treatment by her husband, and because, in their quarrels, he had made remarks to her to the effect that he cared more for the co-respondent last mentioned than for her. She further testifies that this woman conversed with her husband over the

telephone, and that, on such occasions, she would listen to the conversation, using the instrument on the extension of the line for that purpose, and heard him make engagements with her. Plaintiff's evidence is corroborated by that of her son, in so far as respects the fact that quarrels occurred frequently between her and defendant, and that, in one of them, defendant made the remark to the effect that he cared more for the woman mentioned as co-respondent herein than he did for plaintiff. Some months after plaintiff had left the matrimonial home, she, or at least members of her family, employed detectives to observe defendant's conduct. One day, during the course of their 30 days' employment, two of the detectives saw the co-respondent mentioned leave the place at which she was employed, and get on a street car. They followed her. She got off the car at the City Park, and went into a restaurant. Defendant was there, and he and this co-respondent met. The two detectives mentioned were joined by a third. Only two of them testified; the other having died prior to the trial. The evidence of the two, who testified, is to the effect that when the couple met they sat downstairs for a while, and then went upstairs into a private room; that they watched from the outside and saw defendant, after he and the co-respondent had reached the room, go to the window and close the blinds; that the blinds remained closed for some time; that defendant and his companion were in the room for two hours and a half, and left the restaurant together. Defendant admits that he was at the restaurant, and in the private room with the co-respondent, but denies having been guilty of any misconduct with her. He also denies that he closed the blinds, and recalls no special reason why he took her to the restaurant near the City Park, but later says that he guesses they went there for the purpose of discussing the case, evidently referring to the trouble between himself and his wife, as this suit had not been instituted at that time, and hence he could not have referred to the suit. Defendant's companion at the restaurant did not testify in the case.

In our view, the evidence, considered as a whole, entitles plaintiff to judgment. That defendant made a remark to plaintiff to the effect that he cared more for the co-respondent mentioned in articles 3 and 4 of the petition, although denied by him, we think is proven by the evidence of plaintiff and her son. That defendant made engagements with this co-respondent is not denied by him, although he testified in his own behalf. We therefore feel that we should consider that fact also as proven. These facts have a direct tendency to prove the existence of improper relations between the defendant and the co-respondent. In addition to these facts, the restaurant to which defendant took, or at which he met, the co-respondent, we gather from the evidence, is one that was out of the way for both of them; and, although such was the case, defendant is unable to assign a plausible reason for having taken or met the co-respondent there, and for having taken her to a private room in that restaurant, alone, although she was the very woman whom, a few months before, he and his wife had fallen out concerning. Under the circumstances, we feel justified in concluding, from the evidence, as a whole, that plaintiff has proven her case.

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and set aside, and that there now be judgment granting plaintiff a divorce from the bonds of matrimony existing between her and defendant, and ordering a partition of the property belonging to the community of acquêts and gains existing between plaintiff and her husband. It is further ordered that plaintiff be given the custody of her two minor children,

LORIO v. GLADNEY

and that defendant pay the costs of this case in both courts.

### On Application for Rehearing.

PER CURIAM. The right of plaintiff to claim alimony in some supplemental or other proceeding is reserved.

Rehearing refused.