141 So. 60

In re HEARD.

No. 30797.

March 30, 1932.

John R. Upton, Nicholas Callan, and Charles F. Fletchinger, all of New Orleans, for disbarment committee.

C. S. Hebert, of New Orleans, James P. Guillot, of Derry, and Harvey G. Fields, of Farmerville, for Heard.

ROGERS, J.

The disbarment committee of this court instituted an original proceeding for the disbarment of Zachary Taylor Heard, a member of the bar of the city of Monroe, for alleged unprofessional conduct in connection with certain of his dealings with a negro woman named Stella Spencer. A citation and a copy of the petition were sent to the sheriff of Ouachita parish, at Monroe, for service on the defendant. The sheriff was unable to find the defendant, and, being reliably informed defendant had left the state, he made his return accordingly. Application was then made by the disbarment committee to this court for the appointment of a curator ad hoc, which was granted. The curator ad hoc thus appointed excepted to the form of the proceeding; and, on his exception being maintained, the suit was dismissed. See In re Heard, 169 La. 559, 125 So. 593.

Subsequently, this court amended its rules so as to provide for the citation of absent defendants in disbarment proceedings. The present suit was then instituted on the same causes of action set forth in the previous suit; whereupon, after some delay, the defendant voluntarily appeared through his counsel and filed his answer.

The petition to disbar defendant is predicated on two specific grounds of alleged professional misconduct.

Under the first ground, it is alleged, in substance, that the defendant appropriated to his own use $300, the proceeds of a policy or death benefit certificate in the Mosaic Templars of America, of Little Rock, Ark., which he collected in his capacity as an attorney at law for account of Stella Spencer, widow of Ide Spencer, the insured, who, together with her seven children, were the beneficiaries. That the Mosaic Templars of America did not at any time deny liability, but, on the contrary, evinced a willingness to discharge its obligation, subject only to the requirement that the payment in behalf of the minor children of the insured be made to their duly appointed guardian or tutor, and so advised Stella Spencer.

That, on or about September 26, 1927, Stella Spencer called on the defendant as an attorney at law, related to him the circumstances and informed him of her desire to collect the proceeds of the policy and of the necessity of procuring for the insurer evidence of her appointment as natural tutrix of her minor children, which appointment defendant had previously secured in Richland parish for another purpose, and for which he had been paid. That defendant assured Stella Spencer he would secure the necessary evidence of her appointment as natural tutrix, and, in order to expedite the payment of the policy, he would forward the papers direct to the insurers, which defendant did, by procuring a copy of the letters of tutorship from the clerk of court of Richland parish.

That on or about October 20, 1927, Stella Spencer called at defendant's office in Monroe, where the defendant exhibited to her a voucher check for $300 dated October 15, 1927, drawn by the Mosaic Templars of America on the Federal Bank & Trust Company, of Little Rock, Ark., made payable to Stella Spencer, individually and as tutrix of her minor children therein named, which check was issued in settlement of the insurance on the life of Ide Spencer. That defendant caused Stella Spencer to indorse the names of the payees on the reverse of the check, which, when done, was left at his suggestion with the defendant for collection. That, on the same day, defendant presented the check to the Ouachita National Bank, of Monroe, La., which bank paid defendant in currency $300, the face value of the check.

That thereafter Stella Spencer made repeated and unavailing demands upon defendant for the payment to her, in her individual and representative capacity, of the proceeds of the check; but that the defendant evaded payment, first on one pretext and then on another, until becoming weary of the delays and distrustful of defendant's promises Stella Spencer sought other counsel, resulting in the making of a complaint which eventually reached the disbarment committee; and that no part of the proceeds of said check was ever paid to Stella Spencer.

Under the second ground, it is alleged, in substance, that during the investigation of the complaint, and after defendant was notified of the pendency thereof and requested to appear before the committee in his own defense, defendant attempted to stifle the investigation by tampering with the prosecuting witness,

Stella Spencer, and sought, by offering her a monetary reward, to influence her to withdraw the complaint and refrain from giving evidence against him before the committee or in any proceeding looking to his disbarment.

The defendant answered the petition, denying generally the specific acts of misconduct alleged, and, in substance, averred that Stella Spencer employed him to file suit to cancel an oil and gas lease on 160 acres of land in Richland parish; that to do this it was necessary to open the succession of Ide Spencer, for which defendant was paid $25. That Stella Spencer had agreed to pay a fee of 50 per cent. of whatever sum was recovered as the result of the litigation over the oil and gas lease; that he expended more than $25 in costs and in making trips to Rayville, the parish seat of Richland, when Stella Spencer refused to go on with the suit.

That at the time he opened the succession of her husband, Stella Spencer informed him of the policy of $300 in the Mosaic Templars of America on the life of Ide Spencer, but that he then advised her the services of an attorney were unnecessary, and that she should take up the collection of the policy through the local lodge. That thereafter, to wit, September 26, 1927, Stella Spencer engaged his services to collect the policy of insurance because her own efforts and those of other attorneys of the Monroe bar had been ineffectual, his employment being, "on the basis of a 50/50 division of whatever amount he might recover, said arrangement being readily assented to by Stella Spencer, to repay defendant for the cash he had spent out of his own funds in opening the succession of Ide Spencer and for his services as attorney representing her in said matter, as well as collecting the policy which up to that time Stella Spencer had been unable to collect."

Defendant then sets forth the extent of the services he rendered to effect the collection of the check and the manner in which he accounted to the widow of the insured for the proceeds, averring that upon collection he immediately paid her 50 per cent. of the proceeds, less the expense of a telegram and of exchange, taking her receipt therefor in the presence of three responsible and reputable witnesses, "who saw the settlement and saw Stella Spencer leave the office apparently perfectly satisfied; that said receipt has been lost or stolen."

Defendant concluded his answer by averring that he was ready with his witnesses to appear before the committee to disprove the charges so unjustly made, but that the committee refused to permit him to do so, and that he filed with the committee the affidavits of himself and of other witnesses, which were before the committee when the suit was filed without a formal hearing; and he annexes to his answer copies of the documents which the committee lent his counsel for that purpose from its file, including the answer defendant filed to the complaint of Stella Spencer before the committee, and the affidavits attached.

Under section 9 of rule XX (161 La., viii), of the rules of this court then in force, the case was referred to Henry D. Montgomery, Esq., a practicing lawyer of Monroe, La., for more than ten years, as a commissioner to hear the evidence and to report to this court his findings of fact and conclusions of law.

After the commissioner had completed the hearing of evidence and had made his report

to this court under section 6 of rule XVIII, adopted December 15, 1930 and effective on and after January 2, 1931 (171 La. xix), and after defendant had excepted to the report, and the exceptions had been fixed for hearing in open court, the defendant formally moved to have the evidence taken before the commissioner supplemented by evidence to be taken in open court, predicating his motion upon a provision in section 6 of rule XVIII, supra, viz.: "For sufficient cause shown, the court may permit evidence taken before the commissioner to be supplemented by hearing in open court."

In argument on the motion, it was disclosed that defendant, who is now residing in New Orleans, desired to take the testimony of himself and of three other witnesses, namely, Charles Rogers, S. O. Scruggs, and John Willis.

The court refused the motion as to Rogers, Scruggs, and Willis, because Rogers and Scruggs, summoned at defendant's request, were present at the hearing before the commissioner, but were not called upon to testify by defendant's attorney, and, therefore, there was no good reason to hear their testimony in open court. And as to Willis, the record indicated that he resides in or near Monroe, and defendant failed to show that he would not have been available had defendant desired his testimony before the commissioner.

Because of defendant's complaint that he was prevented by poverty from attending the hearing before the commissioner, this court, without intending to establish a precedent, the matter of supplementing evidence before the commissioner by evidence in open court being entirely within the court's discretion, concluded to permit defendant to testify in his own behalf in open court, and accordingly fixed a time for the hearing of the testimony contradictorily with the disbarment committee, with the right given to the committee to rebut the testimony, if it should see fit to do so. Accordingly, at the time fixed, defendant was examined, cross-examined, and re-examined. The case was then closed, and it is now before us for final disposition on the commissioner's report, the exceptions thereto and the testimony given by defendant in his own behalf in open court, supplementary to the evidence taken before the commissioner.

At the hearing before the commissioner, the disbarment committee and the defendant were represented by counsel. The evidence adduced was both oral and documentary, and, together with the pleadings, was transmitted to this court with the commissioner's report.

The report deals only with the first ground of misconduct alleged by the disbarment committee, no evidence having been offered on the second ground of alleged tampering with the prosecuting witness, she having died shortly prior to the hearing before the commissioner.

The report of the commissioner, based on the record as made up before him, contains the following finding of facts, viz.:

"Zachary Taylor Heard was regularly admitted to the practice of law in the State of Louisiana by this Honorable Court on or about June 5, 1911.

"The said Zachary Taylor Heard took the oath prescribed by law, and during the years 1926 and 1927 was engaged in the practice of law in and about the City of Monroe.

"That during said time the said Zachary Taylor Heard has demeaned himself in a

manner inconsistent and at variance with the oath subscribed by him as an attorney at law, and has disregarded the duties and violated the obligations incumbent upon him as a member of the bar in that:

"(a) One Ide Spencer, who departed this life on or about November 28, 1926, left surviving him a widow, to-wit: Stella Spencer, and seven (7) minor children, to-wit: Fanny Spencer, Emma Spencer, Ide Spencer, Jr., Harriet Spencer, Joseph Spencer, Booker T. Spencer and Jeremiah Spencer, and also left a policy of insurance in the sum of Three Hundred and No/100 ($300.00) Dollars, issued by the Mosaic Templars of America, of Little Rock, Arkansas, payable to his said surviving widow and minor children as beneficiaries.

"(b) Said insurer did not resist payment of said policy, but did require the qualification of someone to act as legal representative of the aforesaid minors before making payment.

"(c) Stella Spencer, surviving widow and mother of the children aforesaid, qualified as natural tutrix of said children on or about November 28, 1926; and said qualification was the result of employment for that purpose by Stella Spencer of Zachary Taylor Heard, defendant herein, and for said services the said Zachary Taylor Heard was paid a fee commensurate with services performed.

"(d) On or about September 26, 1927, the said Stella Spencer called upon the defendant to furnish evidence of her prior appointment as natural tutrix of her said minor children in order that she might then secure payment of the policy aforesaid.

"(e) The defendant, Zachary Taylor Heard, instead of furnishing certified copy of letters of tutorship to Stella Spencer, undertook to and did collect from the insurer the sum of Three Hundred and No/100 ($300.00) Dollars.

"(f) The said Zachary Taylor Heard did not account to the said Stella Spencer for any part of the proceeds of said policy.

"(g) Stella Spencer departed this life sometime prior to the date of final hearing herein, but subsequent to the date of preliminary investigation, which was conducted on February 25, 1928 at office of Robert M. Breard, Jr., in the City of Monroe.

"(h) The said Zachary Taylor Heard, although granted several continuances, at his request, in the matter of preliminary investigation, and although given ample opportunity to be present, declined or failed to appear at such preliminary investigation and cross-examine the witness, Stella Spencer.

"(i) Ample opportunity would have been afforded him by the Disbarment Committee to cross-examine said witness.

"(j) Although one Charles Rogers and one S. O. Scruggs were subpœnaed in behalf of defendant to appear and give testimony herein, and although they did so appear, neither was called to testify, although present throughout the entire hearing.

"(k) Although the said Zachary Taylor Heard alleges the execution of a receipt for One Hundred Fifty and No/100 ($150.00) Dollars of the Three Hundred and No/100 ($300.00) Dollars, thus collected by him, the remaining One Hundred Fifty and No/100 ($150.00) Dollars of which he avers was for services rendered, no fact is shown to which the alleged loss of said receipt can be ascribed."

And the report concludes with the commissioner's finding that "the defendant is guilty of embezzlement."

Under the exceptions filed by the defendant to the commissioner's report, six distinct propositions are submitted for the consideration of the court, viz.:

(1) The case should be resubmitted to the commissioner, so that he may put it in such shape as will comply with the rules.

(2) Another hearing of the case should be had either before a new commissioner or before the court itself.

(3) Defendant should be given the opportunity to supplement the testimony taken with the testimony of Charles Rogers, S. O. Scruggs, and John Willis.

(4) The testimony of Stella Spencer given in the preliminary hearing conducted under the auspices of the disbarment committee was not legally admissible on the hearing before the commissioner, and should be disregarded.

(5) The testimony of Joseph Pendleton, Eliza Ware, Hattie Taylor, Fannie Robinson, Emma Spencer, and Harriet Hassen, on behalf of the committee, is hearsay and cannot be considered.

(6) There is no evidence in the case to justify the disbarment of defendant, the evidence being entirely in his favor.

We shall dispose of these propositions in the order in which they are stated.

1. Defendant contends the commissioner's report violates section 6 of rule XVIII, providing that: "Upon the termination of the hearing, the Commissioner shall report to the Court his findings of fact and conclusions of law." Defendant contends that the commissioner reports his findings of fact and then reports a conclusion of fact, and not a conclusion of law, as required by the rule. Defendant also contends that under that part of section 6 of rule XVIII, providing that, if no objection be made within twenty days from its filing, "the report shall stand confirmed," there is no judgment in the case subject to review. We do not find any merit in these contentions.

An examination of the report as submitted discloses, we think, that the issues were carefully reviewed by the commissioner, and the recital therein of his findings of fact, followed by the announcement of his conclusion that the defendant is guilty of embezzlement, means nothing more than that, from the facts as found by him, the defendant, under the law, is guilty of the offense of embezzlement.

It is true, as suggested by defendant, the commissioner might have recommended that defendant be disbarred, but the fact that he did not choose to do so affords no ground for the rejection of his report nor for its return to him for the purpose of having him add thereto his recommendation as to the penalty which the court should impose in the exercise of its disciplinary jurisdiction over one of its own officers.

2. Defendant contends that, inasmuch as the report of the commissioner does not conform to the rules of court, it cannot be approved, and that the court should appoint a commissioner in lieu of Commissioner Montgomery, who is now functus officio, or should hear the case and dispose of it de novo.

A sufficient answer to this contention is that the case was tried regularly and fairly, and a full opportunity given to both parties to present their evidence. There is no need for any further hearing in the matter.

3. This complaint is disposed of by our ruling on defendant's motion to supplement the testimony before the commissioner by the testimony of Charles Rogers, S. O. Scruggs, and John Willis, hereinbefore referred to. All these parties are residents of the city of Monroe. Rogers and Scruggs, summoned at defendant's request, were actually present at the hearing before the commissioner, but neither was placed on the witness stand. Notwithstanding the presence of Rogers, it was sought on behalf of defendant to offer in evidence his ex parte affidavit instead of taking his testimony, which offer, on objection of plaintiff, was properly rejected. There is no good reason why this testimony should be heard at this late date.

4. Stella Spencer, the prosecuting witness, died shortly before the case was heard by the commissioner. Defendant, on the trial before the commissioner, objected, through his counsel, to the admission of her testimony taken on the preliminary hearing before the committee at Monroe, La., on February 25, 1928, on the ground that the testimony is hearsay. The testimony was admitted subject to the objection.

The testimony was taken before Albert P. Garland, Esq., a member of the committee, who had been appointed for the purpose in accordance with the rules of the committee. The record discloses that the testimony was taken only after ample notice had been given defendant of the time and place of the hearing, so that he might be present, personally or by counsel, and cross-examine the witness; but defendant did not avail himself of the right of cross-examination of the witness.

We do not think defendant's objection is well founded. The examination of the witness

was not conducted ex parte by an unofficial committee as defendant contends, but it was conducted openly, after due notice to defendant, and before a member of the committee, acting officially, as prescribed by the rules of the committee, which it has full authority to adopt. See rule XX, § 6 (161 La., vii) now rule XVIII, § 1 (171 La., xvii–xviii).

The preliminary examination at which the testimony of Stella Spencer was taken was an indispensable stage of the proceeding against defendant for disbarment upon the same accusation, and he had an opportunity of cross-examining the witness himself or of having her cross-examined by counsel in his behalf. In these circumstances, the testimony of the witness who is dead is one of the well recognized instances within the exception to the hearsay rule, an exception which is founded on the necessity for its admission in order to prevent a miscarriage of justice.

5. The complaint that the testimony of certain witnesses for the committee cannot be considered because it is hearsay loses its force with the statement on our part that we have not given effect to any hearsay testimony in disposing of the issues presented in this proceeding.

6. This exception to the commissioner's report involves its correctness on the merits of the charge against the defendant. The exception cannot be maintained. Our conclusion is, after a careful reading of the record, including the testimony of defendant, himself, taken before this court, that the findings of fact made by the commissioner are fully warranted by the evidence.

The record discloses that Ide Spencer, husband of Stella Spencer, died on November 28, 1926. Stella Spencer was qualified as natu-

ral tutrix of her seven minor children by the Fifth judicial district court for the parish of Richland on April 23, 1927. Defendant was employed in his professional capacity to conduct these proceedings which were filed and completed on the same day. Defendant alleged in his answer that the purpose of the tutorship proceeding was to enable him to file a suit to cancel an oil and gas lease on 160 acres of land, which is owned in indivision by the mother, two sisters, and seven children of Ide Spencer, in accordance with an oral agreement with Stella Spencer.

Stella Spencer, Joseph Pendleton, her brother, who was appointed undertutor, and the mother and sisters of Ide Spencer expressly denied that the tutorship proceeding was entered into for any such purpose. Their testimony is that Stella Spencer was qualified as natural tutrix in order to meet the requirement of the Richland State Bank, of Rayville, that it be done before the bank would permit the withdrawal of $320 on deposit in that institution, representing the rental from the oil and gas lease, the minors' interest being an undivided one-sixth, or $53.34. The witnesses testified that Stella Spencer paid the defendant $25 for his services and costs, and that the mother and two sisters of Ide Spencer gave him $5 each, or a total of $15, for assisting them in obtaining their proportion of the money on deposit in the bank.

Notwithstanding the averment in his answer, defendant admitted in his testimony before this court that he was employed by Stella Spencer to conduct the tutorship proceeding for the purpose of getting the money out of the bank, which had refused to pay

the money until they could pay it all at one time, "and she (Stella Spencer) had to be appointed as tutrix."

Defendant did testify that he was also employed "verbally by Stella Spencer" to bring the suit to annul the oil and gas lease. He admitted the receipt from her of $25 at the time of the tutorship proceedings, but he testified that he spent that amount, together with $15, or a total of $40, in making trips back and forth to Rayville, the seat of Richland parish, for court costs, "and so forth."

The record shows that defendant spent for court costs $11.35, so that the difference between that amount and the $25 he received from Stella Spencer, together with the $15 he received from the mother and sisters of Ide Spencer, was paid to and received by him in full payment for his services in the tutorship proceeding and in procuring the money from the bank, as testified to by the witnesses for the disbarment committee, and as found by the commissioner.

Stella Spencer denied that she employed defendant to institute suit to annul the gas and oil lease referred to by him. The mother and sisters of Ide Spencer also denied that they had employed defendant for that purpose. They testified that defendant spoke to them about such a suit, but that they declined to engage in any litigation over the lease, being fully satisfied with their contract.

We find ourselves unable to accept defendant's story, which is apparently an afterthought to meet the charges that are made the basis of the present proceeding for disbarment. Defendant offers no explanation why he relied solely on the alleged "verbal employment" of Stella Spencer in expending the

time and money he claims to have expended in·making preparations to file a suit, which Stella Spencer later refused to have filed. Stella Spencer had no personal interest in the lease, and her seven children collectively owned only an undivided one-sixth interest therein. And no reason is given as to why she wished to assume on behalf of her minor children the responsibility of contracting with defendant and the burden of engaging in a law,suit.

Defendant, in his answer, alleged that on September 26, 1927, Stella Spencer engaged him to collect the amount due under the policy·of insurance issued by the Mosaic Templars of America, "on a basis of a fifty-fifty division of whatever he might recover, which was readily agreed to by Stella Spencer to repay defendant for the money he had spent in opening the succession of Ide Spencer and for his services in that matter, as well as for collecting the policy which up to that time Stella Spencer had been unable to collect." Defendant swore to this, substantially, in his testimony before this court. But defendant failed to ·give any details as to his alleged expenditures, nor did he show the value of his services in the tutorship proceeding, nor how much he was to receive for collecting the amount of the insurance policy. The court costs, as heretofore stated, were only $11.35. The number of trips to Rayville, the necessity therefor, and the cost thereof, were not shown nor attempted to be shown. And the reasonableness of a charge of $150 for collecting $300, over which there was no contest, was not shown, nor could it be shown, even if defendant were employed for the purpose.

Defendant testified that, at the time Stella Spencer indorsed the check for $300, which he had received from the Mosaic Templars of America, she also executed a power of attorney to defendant before Hugh T. Layne, notary public, authorizing defendant to collect the check and to retain his 50 per cent. thereof. That after cashing the check he returned to his office and paid Stella Spencer her 50 per cent., less the expense of a telegram and of the exchange, taking her receipt therefor in the presence of Miss Alberta Holt, his stenographer, Charles Rogers and S. O. Scruggs, which receipt had been lost or stolen; and defendant intimates rather strongly that the receipt was abstracted from his desk by Stella Spencer.

Defendant testified that after the power of attorney was typed, at the suggestion of Charles Rogers, who was accidentally in the office, he interlined in pen and ink in his own handwriting, following the figure $300, the words, "and retain one-half of the same as his fee."

Defendant did not place Charles Rogers nor S. O. Scruggs, nor the notary before whom the power of attorney was signed, on the witness stand to substantiate his story. The testimony of Miss Holt was taken by depositions on February 24, 1931, at Memphis, Tenn., where she was residing: This witness testified that she was present when the settlement was made with Stella Spencer; that she typed the power of attorney and the receipt alleged to have been signed by Stella Spencer, and that the receipt was taken by her.and placed in defendant's files. She stated that she did not know what had become of the receipt. She also testified that the words rela-

tive to defendant's retaining one-half of the proceeds of the policy as his fee were inserted in the power of attorney before it was signed.

It appears that the witness had signed an affidavit at Monroe, La., on February 18, 1928, which affidavit had been prepared by the defendant. The affidavit was attached to the interrogatories propounded to the witness, and she was questioned principally with reference to the recitals of the affidavit, which she affirmed in a perfunctory manner. On cross-examination by the representative of the disbarment committee, however, she was not so emphatic and certain, and some inconsistencies crept into her testimony. After testifying, for instance, on cross-examination, that the purpose of executing the power of attorney was to fix defendant's fee and not for the purpose of enabling him to collect the check for $300, since the indorsement of Stella Spencer on the check was sufficient for that purpose, she admitted that she did not know why defendant in dictating the power of attorney to her did not fix the amount of the fee. The commissioner evidently attached no weight to the testimony, and, for our own part, we are unable to say that he committed any error in that respect.

Stella Spencer admitted signing the power of attorney, but she denied that she had received any money and had signed any receipt. She also emphatically denied that she had agreed to give defendant one-half of the insurance money, and declared that the words, "and retain one-half of same as his fee," appearing in the power of attorney in ink, were not there when she signed it, and that "he (defendant) must have wrote that in there afterwards."

Stella Spencer stated that she signed the power of attorney and indorsed the check, because defendant told her that the check was a bank draft, and that it was necessary to sign the papers before the bank would pay the draft. Defendant testified that he obtained the power of attorney, because, "the bank (name not stated) refused to handle the check," and that as he was contemplating momentarily to leave for Arkadelphia, Ark., he thought he would "go by" and collect the check at that time; all of which he explained to Stella Spencer.

But the record shows that, after defendant caused Stella Spencer to indorse the check and execute the power of attorney, on October 20, 1927, he cashed the check the same day at the Ouachita National Bank, of Monroe, La., without presenting the power of attorney, which, as a matter of fact, was wholly unnecessary.

As we read the record, the true story of the transaction between defendant and Stella Spencer relative to the collection of the proceeds of the insurance policy on the life of her husband, Ide Spencer, is as follows, viz.:

Shortly after the death of her husband, Stella Spencer and her seven children went to live with her mother in the city of Monroe, where Stella Spencer secured work in a laundry.

Ide Spencer was a member of Holly Grove Lodge of the Mosaic Templars of America, and after his death Stella Spencer made the necessary proofs on the form provided for that purpose. Eliza Ware, of Archibald, La., the scribe of the local lodge, then paid to Stella Spencer $40 for burial expenses, and on her behalf took up with the home office,

583

at Little Rock, Ark., the question of the collection of the policy for $300. Under the rules of the organization, it appears that no policy is payable until the expiration of ninety days, presumably from the time proofs of death are furnished. Some time after the expiration of this delay, Eliza Ware addressed a letter of inquiry to the home office, receiving in reply a letter later August 22, 1927, stating, in substance, that, if minors were involved in the claim, the check could not be issued until guardianship papers had been received. The writer, who was the national grand scribe and treasurer, advised that the papers be forwarded at once to avoid any further delay in the adjustment.

Joseph Pendleton, the brother of Stella Spencer, who also resided with his mother, sought the advice of Robert M. Breard, Jr., a practicing attorney at Monroe, as to what steps his sister should take to collect the insurance money. Mr. Breard advised Pendleton that it would be necessary for his sister to furnish the insurer with copies of letters of tutorship. Mr. Breard, however, was not employed, and he gave the matter no further thought.

Joseph Pendleton informed Stella Spencer of the advice he had received from Mr. Breard, and as a result they called on defendant, because he had attended to the business of qualifying Stella Spencer as the natural tutrix of her children. Stella Spencer handed to defendant the letter from the Mosaic Templars of America, which had been delivered to her by Eliza Ware.

Stella Spencer had never employed any attorney to collect the proceeds of the policy, as alleged by defendant, and she had never

584

been advised by the insurer that her claim would not be paid. Her only purpose in calling on defendant was to get him to write a letter informing the insurer, of her prior appointment as natural tutrix, and not to employ him to collect the insurance. While the parties were in his office, defendant addressed a letter to the insurer, not demanding payment of the insurance as would have been the usual procedure if he had been employed to collect it, but simply advising the insurer that he had had an order of court issued appointing Stella Spencer tutrix or guardian for her minor children and Joseph Pendleton as undertutor. He also said in his letter that its purpose was to state that Stella Spencer had the authority to sign in behalf of the minors the proper release and receipt necessary to pay her the full amount of the insurance.

The following day the insurer wrote defendant, stating that, if he would send to its office "a copy of the guardianship papers for the minor children and undertutor, we shall be glad to issue check without further delay, for $300 in full payment of this matter." Defendant secured and forwarded the necessary papers, and under date of October 4, 1927, the insurer acknowledged their receipt, and advised that it would send the check on October 15, 1927. Defendant received the check on October 18, 1927, and, in response to his notice to that effect, Stella Spencer called at his office on October 20, 1927, when she signed the power of attorney and indorsed the check, which defendant cashed the same day, as hereinbefore stated.

Stella Spencer never agreed to pay defendant $150 or any other amount for collecting $300, the face of the insurance policy, al-

though she was willing to pay him something for his trouble, in order to obtain a settlement, but could never get defendant to say what he thought his services were worth. He retained the entire $300, and kept putting her off with one excuse and another for his failure to account for the money, until she finally placed the matter in the hands of an attorney at Monroe, who brought it to the attention of the Monroe Bar Association, and that organization in turn referred it to the disbarment committee of this court.

As we have heretofore had occasion to remark, the duty of disbarring a member of the profession is one of the most painful of the many painful duties which our oath of office imposes upon us, but we must not let our sympathies stand in the way of our responsibilities. In re Wolff, 173 La. 257, 136 So. 583.

Where an attorney violates the confidence reposed in him by the court and his duty towards his client, the court must inflict upon him a penalty commensurate with his wrong. The dignity of the court, the integrity of the profession, the protection of clients, and the public good alike demand this.

The misappropriation by the defendant of the funds of Stella Spencer, which he collected in his capacity as an attorney at law, was an act of moral turpitude, constituting gross professional misconduct, and evidenced such a lack of moral fitness as to warrant his disbarment. In re Wolff, 165 La. 641, 115 So. 809.

For the reasons assigned, the report of Henry D. Montgomery, Esq., the commissioner herein, is approved and confirmed, and it is now ordered that the license to practice law of the defendant Zachary Taylor Heard be revoked and his name stricken from the roll of attorneys of this state.