O’NIELL, C. J.
 

 This is a proceeding to disbar an attorney at law for misappropriating funds collected for a client. Tbe commissioner appointed to
 
 *629
 
 take the evidence and report his findings of fact and conclusions of law, in accordance with sections 4, 5, and 6 of rule XVIII of the Buies of the court, found, after considering the evidence, that the attorney was guilty of the offense charged, and concluded that he ought to be disbarred. The attorney took exception to the report, and the case has been argued and submitted on the record of the evidence received by the commissioner.
 

 In his answer to the suit, the attorney, Mr. Fourchy, admitted having used the money collected for his client, Arthur P. Dietz, but pleaded th'at Dietz had consented that he, the attorney, might retain and use the money as a loan, for 30 or 60 or 90 days, at interest at 5 per cent, per annum. Dietz testified that the attorney had concealed from him the fact that the collection had been made., until he (Dietz) inquired of the party from whom the collection was made, and that, even then, he was compelled to employ another attorney to collect from Mr. Fourchy.
 

 The only question in the case is whether Mr. Fourchy had the consent of Mr. Dietz to use the latter’s money, as a loan at interest. We shall state the facts of the case a.s they were related by Mr. Fourchy himself, as a witness. Mr. Dietz employed him to collect, by suit if necessary, a claim against New Orleans Public Service, for damages for personal injuries, on a contingent fee of 50 per cent. Mr. Fourchy filed the suit, and on the day on which it was to be tried, on or about the 17th of March, 1930, a compromise settlement was effected, by the defendant’s agreeing to pay $700. Mr. Dietz was willing to accept $600, but Mr. Fourchy persuaded the company to pay $700. On the 27th of March, 1930, Mr. Dietz called at Mr. Fourchy’s office and signed a receipt for the $700, perhaps prepared by the corporation, releasing the corporation from further liability. Mr. Fourchy says that it was on that occasion that he asked Mr. Dietz to allow him, Mr. Fourchy, to retain Dietz’ share of the money as a loan, at 5 per cent, per annum, to be paid in 30, 60, or 90 days, and that Mr. Dietz agreed to the proposition. - On that day or the next day, Mr. Fourchy received the corporation’s check for the $700, payable to him, personally, and he cashed the check and retained the proceeds. He expected to collect other money due to him within 90 days, which would enable him to reimburse Dietz; but he failed to collect the other money and could not pay Dietz. On the 29th of September, 1930, being six months after Mr. Fourchy had collected the money, Mr. Dietz wrote a letter to New Orleans Public Service, asking why his claim had not been paid; and, on the same day, the corporation acknowledged receipt of the letter and said: “We would suggest that you request your attorney to give you the information asked for in said letter.” In July, 1931, according to the testimony of Mr. Fourchy, Mr. Guy J. D’Antonio, an attorney at law, called upon him and said: “I would like to see about getting Dietz’ money.” Mr. Fourchy asked: “What money?” and Mr. D’Antonio replied: “That railroad money.” Mr. Fourchy, having his memory thus refreshed, said: “Of course, that is all right; everything is settled; I will take it up and find out what it is.” He was busy writing a brief, and asked Mr. D’Antonio to call the next day and said he would let Mr. D’Antonio know what the amount of the claim was. We do not understand why Mr. D’Antonio had not been informed by Mr. Dietz as to what the amount
 
 *631
 
 of the collection was, or why Mr. Fourehy did, not then remember the amount, if in fact Mr. Dietz had lent half of the amount of the collection to Mr. Fourehy. We are simply stating the facts as Mr. Fourehy related them. On the next day, or perhaps the second day, after Mr. D’Antonio’s first visit to Mr. Fourchy’s office, Mr. D’Antonio called again; and Mr. Fourehy informed him that he (Fourehy) had examined his office files and found that the amount collected was $700. lie told Mr. D’Antonio that Mr. Dietz had authorized him (Fourehy) to use the money; that he did not have the money then to pay to Mr. Dietz, but would pay him in a few days. Mr. D’Antonio replied that Mr. D'ietz was insisting that payment should be made immediately, otherwise-he would file suit. Mr. Fourehy replied that it would not facilitate matters to file suit, and proposed to give a check for the amount due Mr. Dietz dated July 14th which was several days off. Mr. D’Antonio accepted the check, but on the 14th it was dishonored by the bank for want of sufficient funds. Mr. Fourehy then gave Mr. D’Antonio another postdated check, dated July 21st, for $370.80, to cover not only Dietz’ half of the $700, but also a deposit of $10 made by Dietz and 5 per cent, interest on the $360. On the 21st of July Mr. Fourehy called upon Mr. D’Antonio and told him that he (Mr. Fourehy) had some money in bank -but not enough to pay the check. Mr. D’Antonio became angry and threatened to institute legal proceedings. Mr. Fourehy then invoked the aid of the president of a corporation that he (Mr. Fourchy) was attorney for, and that owed him some money that would be due on the 1st day of August, and the two called at the office of Mr. D’Antonio to settle the matter, but Mr. D’Antonio was out of the city. That was x>n a Saturday, on or about the 22d of July, 1930. The man with Mr. Fourehy requested an attorney in Mr. D’Antonio’s office to tell Mr. D’Antonio that he would “adjust this matter.” Nothing was heard from Mr. D’Antonio by Mr. Fourehy or the friend who had undertaken to help him out, until the 27th of July, 1930, when Mr. D’Antonio .or Mr. Dietz made complaint to the disbarment committee — now called Supreme Court Committee on Professional Ethics and Grievances. The committee heard the testimony of Mr.- Dietz, Mr. D’Antonio, and Mr. Fourehy, and, at the latter’s request, postponed further hearing of testimony until the’ 2d of October, to hear certain witnesses who, Mr. Fourehy said, were absent from the city. On the 19th of October, Mr. Fourehy’ says, Mr. Dietz called at his office, said that his (Dietz’) wife was very sick, and had to undergo an operation, and that he had no money with which to defray the expense. Mr. Fourehy gave him a check for $150, and promised to pay the balance in a few days. That was while the disbarment committee had the matter under consideration. On the 5th of November, 1930, Mr. Fourehy, having-made a collection on the day previous, stopped at the residence of Mr1. Dietz, and told him that, if he would call at his (Fourehy’s) office on the next Saturday, he would pay the balance due to him. Dietz replied that he was broke, and needed groceries, and Mr: Fourehy handed him $4.50, saying that that ought to -last him until Saturday, when he-would pay the balance, $216.30. On Saturday, about the 7th of November, 1930, Mr. Dietz, called at Mr. Fourchy’s office, and the latter, preparing to write the check for $216.30, said: “If I am going to give you a check for the
 
 *633
 
 whole amount now I want my old cheek back” —meaning the check dated July 21, 1930, for $370.80, which the bank had turned down for want of sufficient funds. Mr. Dietz went for the check, but returned without it, saying that Mr. D’Antonio was out of the city. Mr. Eourchy then asked Mr. Dietz if he needed the money, and the latter replied that he needed it to pay a chattel mortgage on his furniture. Mr. Eourchy gave Dietz a cheek for $150, saying that Mr. Dietz should bring him the dishonored check of $370.80 Monday morning, and that he would then pay the balance, $66.30. Mr. Eourchy heard nothing more about the matter until this disbarment suit was filed, November 12, 1931. As far as the record shows, Mr. Eourchy has not yet paid to Mr. Dietz the remaining $66.30 belonging to him.
 

 A witness for Mr. Eourchy testified that he was in the latter’s office on the 27th of March, 1930, when Mr. Diétz signed the release for the $700, and that he, the witness, heard Mr. Eourchy ask Mr. Dietz for the privilege of using his share of the money for 30, 60, or 90 days, offering to pay 5 per cent, interest on the money; and the witness testified: “Mr. Dietz in a way gave his consent.” The commissioner who heard the witness did not believe his testimony. It was contradicted by Mr. Dietz, not only by his testimony but more emphatically by his conduct in trying to find out Why he had not received his share of the money — and by his condition of poverty — with a wife and several children in need. Another witness, for Mr. Eourchy testified that, in April or May, 1931, he met Mr. Dietz in Mr. Eourchy’s office, when Mr. Eourchy was absent, and asked Mr. Dietz what he was there for, and the latter said: “I loaned him some money and I am up here trying to collect it from him.” The commissioner did not believe that testimony, and we do not believe it. The witness may have been mistaken about what Dietz told him about his trying to collect money from Eourchy, but we do not believe that Dietz said that he had “loaned him some money,” as the witness said.
 

 Mr. Eourchy’s plea that his client lent him the money which he appropriated to his own use is contradicted by the testimony of the client and of Mr. D’Antonio, and by all of the circumstances of the case. As much as we regret it, therefore, the report of the commissioner must be affirmed and made' the judgment of the court.
 

 The report filed by the commissioner in this case is approved and confirmed, and accordingly the license issued to Paul L. Eourchy, on, the 10th of March, 1884, to practice as an attorney and counsellor at law; is hereby revoked and rescinded, and his name is ordered stricken from the roll of attorneys.
 

 ST. PAUL, J., dissents from the refusal of the court to grant a rehearing.