9 So.2d 566

## LOUISIANA STATE BAR ASS'N v. LECHE.

No. 36532.

June 29, 1942.

Dissenting Opinion July 7, 1942.

Rehearing Denied July 20, 1942.

Frank Wm. Hart, of New Orleans, Eugene A. Conway, of Baton Rouge, Charles A. McCoy, of Lake Charles, Hollingsworth B. Barret, of Shreveport, and Benjamin Y. Wolf, Chairman, of New Orleans, Supreme Court Committee on Professional Ethics and Grievances.

Charles J. Rivet, of New Orleans, for defendant.

Oliver P. Carriere, O'Niell & O'Niell, Robert A. Ainsworth, Jr., and Robert S. Link, Jr., all of New Orleans, amici curiae.

ODOM, Justice.

Section 10, Article VII of the Constitution, provides that the Supreme Court shall have control of, and general supervision over; all inferior courts, and further provides as follows:

"It shall have exclusive original jurisdiction in all disbarment cases involving misconduct of members of the bar, with the power to suspend or disbar under such rules as may be adopted by the court."

Section 12, Article XIII of the Articles of Incorporation of the Louisiana State Bar Association, which was adopted as a rule by this court, reads as follows:

"Section 12. Member Convicted of Felony. Whenever any member of the bar shall be convicted of a felony. and such conviction shall be final, the Committee may present to the Supreme Court a certified or exemplified copy of the judgment of such conviction, and thereupon the court may, without further evidence, if in its opinion the case warrants such action, enter an order striking the name of the person so convicted from the roll of attorneys and cancelling his license to practice law in the State of Louisiana. Upon the person so convicted being pardoned by the President of the United States or Governor of this State, the Court, upon application may vacate or modify such order of disbarment."

Pursuant to this rule, the Committee on Professional Ethics and Grievances of the Louisiana State Bar Association filed a petition in this court on January 5, 1942, in which it is alleged that Richard W. Leche, a member of the bar of this state, was convicted of a felony in the United States District Court for the Western District of Louisiana, Alexandria Division, in the matter entitled "United States of America v. Richard W. Leche". As evidence of the conviction and sentence, a certified copy of the "judgment of sentence" is attached to, and made part of, the petition.

The judgment of sentence shows that he was charged with violating Section 338, 18 U.S.C.A., using the mails to defraud; that he was tried before a jury and found guilty as charged, and sentenced to serve five years on the first count and five years on the second count in the United States Penitentiary at Atlanta, Georgia.

The Committee alleged further that Richard W. Leche, the defendant, appealed from the conviction and sentence to the United States Circuit Court of Appeal for the Fifth Circuit of Louisiana, and that the conviction and sentence were affirmed by that court. Leche v. United States, 118 F.2d 246. This is shown by documentary evidence attached to the petition.

The Committee alleged that the said Leche applied to the Supreme Court of the United States for writs of review, which were refused, and that the conviction and sentence are now final.

The Committee prayed that Richard W. Leche be notified of the filing of the petition and that he be ordered to show cause

why his name should not be stricken from the roll of attorneys and why his license to practice law in this state should not be cancelled.

The petition and annexed documents were presented to the Chief Justice, and the following order was signed by him on January 6, 1942:

"Order

"Considering the above and foregoing petition and the exhibits annexed thereto it is ordered by the Court that Richard W. Leche do show cause on the 12th day of February 1942 why his name should not be stricken from the roll of attorneys and why his license to practice law in the State of Louisiana should not be cancelled."

Service was accepted by the attorney for Richard W. Leche. The defendant, through counsel, excepted to the petition filed by the Committee on the ground that it disclosed no cause of action, and specially pleaded that Section 12 of Article XIII of the Articles of Incorporation of the Louisiana State Bar Association, adopted as a rule by this court, is unconstitutional.

In the case of Louisiana State Bar Association v. Mary H. Connolly, La.Sup., 9 So.2d 582,[1] this day decided, the major issue involved was whether Section 12, Article XIII of the charter of the Louisiana State Bar Association, adopted as a rule by this court, is constitutional. That is the main issue involved in the case at bar. In our opinion in the Connolly case, we said:

"The identical question concerning the constitutionality of the rule of court has been raised in the matter of Louisiana State Bar Association v. Richard W. Leche [La.Sup., 9 So.2d 566[2]] where lengthy and comprehensive briefs have been filed by opposing counsel and also by amici curiae. Counsel for the respondent have adopted the arguments advanced by defense counsel in the Leche case as their argument on the constitutional question in this matter."

We held that the rule is constitutional. In that case, as in this one, the charges made by the Committee against the attorney conformed strictly to the rule, and in the Connolly case it was held that the allegation that the attorney had been convicted of a felony, coupled with the presentation of a certified copy of the judgment of conviction, was sufficient to sustain a cause of action. In the Connolly case the Committee alleged, and attached documents which showed, that the attorney had been convicted in a Federal court. The same charges were made in the case at bar, and the Committee attached documents to its petition showing that the defendant had been convicted in a Federal court.

██ The following rulings in the Connolly case are decisive of the issues in this case: (1) That Section 12, Article XIII of the Articles of Incorporation of the Louisiana State Bar Association, is constitutional, and (2) that the allegation by the Committee that the attorney had been convicted of a felony, coupled with the presentation of a verified copy of the judgment of conviction, was sufficient to sustain a cause of action.

[1] 201 La. 342.

[2] 201 La. 293.

The exception of no cause of action is overruled, and the defendant is ordered to answer within 20 days from the date on which this decree is rendered.

O'NIELL, C. J., does not take part.

HIGGINS, J., dissents and assigns reasons.

FOURNET, J., dissents and will hand down reasons at a later date.

HIGGINS, Justice (dissenting).

The petition under which the disbarment of the defendant, a member of the bar of this State, is sought in this case simply alleges that he " * * * was convicted of a felony in the United States District Court for the Western District of Louisiana, Alexandria Division, * * * as will appear from the certified copy of the judgment of sentence attached hereto and made a part hereof"; that he appealed to the United States Circuit Court of Appeal for the Fifth Circuit, and the judgment was affirmed as appears from the annexed "certified copy of the judgment of affirmation and order of execution"; that the defendant's application to the United States Supreme Court for a writ of review was refused, as appears from a "certificate of the clerk of the court" annexed to the petition and therefore the judgment is final; that under Section 12, Article XIII of the Articles of Incorporation of the Louisiana State Bar Association, now a part of the rules of this court, the Committee on Professional Ethics and Grievances presents " * * * the evidence of conviction in

order that the Court, if in its opinion, the case warrants such action, may enter an order striking the name of the said Richard W. Leche from the roll of attorneys and cancelling his license to practice law in the State of Louisiana." The prayer of the petition is that the defendant " * * * show cause on a day to be fixed by this Court why his name should not be stricken from the roll of attorneys and why his license to practice law in the State of Louisiana should not be cancelled." The documents made part of the petition show that the defendant was convicted of using the mails to defraud in violation of Section 338, 18 U.S.C.A., and sentenced to five years in the Federal Penitentiary at Atlanta, Georgia, but the facts upon which the charge of fraud was based neither appear in the petition nor the annexed certified papers. Acting upon this petition, the court ordered the defendant to show cause on February 12, 1942, why he should not be disbarred.

The defendant filed exceptions of no right and no cause of action on the ground that the petition failed completely to allege any facts whatsoever showing that he was guilty of any misconduct and that, under the law, he was entitled to be apprised in the petition of the act or acts upon which his misconduct is said to have been founded. He specially pleaded that Section 12 of Article XIII of the Articles of Incorporation of the Louisiana State Bar Association, adopted as a rule of this honorable court, is unconstitutional, being violative of Section 10 of Article VII of the State Constitution which vests in this court exclusive original juris-

diction in all disbarment cases involving misconduct of members of the bar.

The Committee originally took the position. that the verdict and sentence, or judgment of the Federal court should be accepted as conclusive evidence of the defendant's misconduct, but subsequently, in its supplemental brief, it stated: "The substance of the respondent's contention is that this Court will divest itself of the original jurisdiction conferred on it by the Constitution, if it construes the rule in question, as it is construed by the Committee, namely, *that an attorney may be disbarred without further evidence, upon the presentation to the Court of a certified or exemplified copy of the judgment, showing that he was convicted of a felony in a Federal Court sitting in Louisiana, and that the conviction is final.* We respectfully submit that a mere reading of the *rule* will show that this contention is not well founded, because the use of the word 'may' in the rules shows conclusively that the Court has not divested itself of jurisdiction, *but has retained jurisdiction to pass on such matters as the respondent may plead and present, to show why he should not be disbarred, notwithstanding his conviction, which is prima facie proof of misconduct.*" (Italics ours.)

The pertinent part of Article VII, Section 10 of the Constitution of 1921, conferring jurisdiction on the Supreme Court, reads as follows: "It shall have *exclusive original jurisdiction* in all *disbarment cases* involving *misconduct* of members of the bar, with the power to suspend or disbar under such *rules* as *may be adopted by the court,* * * *." (Italics ours.)

This court adopted as a rule, Section 12 of Article 13 of the Articles of Incorporation of the Louisiana State Bar Association, which states:

*"Member Convicted of Felony. Whenever any member of the bar shall be convicted of a felony and such conviction shall be final, the Committee may present to the Supreme Court a certified or exemplified copy of the judgment of such conviction, and thereupon the court may, without further evidence, if in its opinion the case warrants such action, enter an order striking the name of the person so convicted from the roll of attorneys and cancelling his license to practice law in the State of Louisiana.* Upon the person so convicted being pardoned by the President of the United States or Governor of this State, the Court, upon application, may vacate or modify such order of disbarment." (Italics ours.)

The above rule has been in effect since 1926.

In the case of In re Kenner, 1933, 1934, 178 La. 774, 152 So. 520, 521, involving misconduct of the attorney in connection with forging a will, the court pointed out, in the first opinion, that this was a case in which the Constitution had granted exclusive original jurisdiction to this court and that the "proceeding is not, in any sense, dependent upon the outcome of the criminal prosecution," and, therefore, the exception of prematurity based on the grounds that the matter should be stayed until the criminal prosecution was concluded, was without merit. In the second opinion, the court stated that this court was "the forum in which such proceedings [disbarment]

shall be had"; that the case was not a criminal prosecution but a civil proceeding; that *"the authority and power to suspend or disbar is unquestionably a judicial function which cannot be delegated to a commissioner or to any one else"*; that the report and recommendation of the commissioner *is not binding either on the defendant or on the court* but was simply a means of taking testimony as a convenience for *the court* which would review the evidence in determining whether or not *it was proved* that the defendant was *guilty of misconduct;* that it was the duty of the court to thoroughly review *"the entire record including the testimony"*; that the Court devote *"the utmost care always to a consideration of them* [*disbarment cases*]"; that the defendant is given notice of the specific charges brought against him and ample time within which to answer them; that "he is ordered to come into the court which has original jurisdiction of the case under the Constitution and to answer the charges"; and that "he is given ample opportunity to make his defense." (Italics and brackets ours.) On the merits, in arriving at its conclusion that it had been proved that the defendant was guilty of misconduct warranting his disbarment, the court reviewed all of the evidence and testimony fully as it had done in Re Heard, 174 La. 563, 141 So. 60, and in Re Fourchy, 175 La. 628, 143 So. 714.

In the case of In re Edwards, 1929, 167 La. 546, 119 So. 868, the defendant licensed attorney was charged in five separate indictments with embezzling his client's money on five different occasions, and he pleaded

guilty on April 12, 1928 to a charge of embezzlement of $1,351.77 of the funds belonging to his client, Dr. W. G. Gill, and was sentenced to a term at hard labor in the State Penitentiary of not less than 1 nor more than 2 years. During his confinement in the penitentiary disbarment proceedings were instituted against him, under Article VII, Section 10 of the Constitution of 1921, and Rule 20, Section 13 of this court, the identical section and rule in question, 161 La. viii. In addition to setting forth the facts, the petition (to which there had been annexed certified copies of the indictments, the minutes of the district court, etc.) alleged that the crime committed by the defendant and for which he had been sentenced, involved moral turpitude and evinced such want of moral fitness and lack of integrity as to justify his disbarment. In deciding that the defendant should be disbarred, the court stated:

"That rule provides that, whenever any member of the bar shall be convicted of a felony and such conviction shall be final, the person so convicted may be stricken from the rolls and his license to practice law canceled.

"The defendant was served with the rule and cited to answer the same, but he failed to appear by answer or otherwise.

*"A trial was had in open court, and due proof was made of the facts as herein recited.*

"Embezzlement is made a felony by the statutes of this state, and the conviction of the defendant had become final, prior to the filing of this proceeding." (Italics ours.)

In the case of State v. Flynn, 1926, 160 La. 483, 107 So. 314, 315, the defendant had been admitted to practice law in the State of New York as well as in the State of Louisiana. He was disbarred from practicing in New York by decree of the Supreme Court of that State, In re Flynn, 208 App.Div. 40, 203 N.Y.S. 29, upon charges of testifying falsely, converting his client's money, and revealing confidential information imparted to him as an attorney, all in connection with a case and legal proceedings that he was handling in his professional capacity. He then came to Louisiana and was practicing here when a disbarment proceeding was instituted against him by the Attorney-General under Article VII, Section 10 of the Constitution of 1921 and the rules of this court, upon the same grounds as those in the original proceeding in New York. There was annexed to and made a part of the petition filed here a certified copy of the proceedings and the opinion and decree of the Supreme Court of New York, in which all of the facts of the case were fully recited. The defendant filed exceptions of no right and no cause of action on the ground that the petition failed to allege the specific facts upon which the charges of misconduct were predicated. In sustaining the exceptions and dismissing the suit, the court stated that disbarment proceedings were recognized even by the Supreme Court of the United States as civil and not criminal in their nature and are "governed by the rules applicable to civil actions," and

"Passing to the consideration of defendant's second exception, we have concluded that the plea should be sustained. The Supreme Court of New York found the defendant guilty of professional misconduct, and disbarred him. *The proceeding before this court is grounded entirely upon the action of the New York Supreme Court, and, while the petition sets forth the facts upon which the order of that court was based, it does not independently charge the existence of those facts as a cause of action against the defendant here.*

"In Ex parte Tillinghast, 4 Pet. 108, 7 L.Ed. 798, the Supreme Court of the United States, through Chief Justice Marshall, admitted an attorney to practice before said court, notwithstanding his name had been stricken from the roll of counselors of the district court of the Northern district of New York by the order of the judge of that court for contempt. The United States Supreme Court, in refusing to recognize the order of the district court, held that it did not feel authorized to punish relator for the offense which had been committed in the other court. On the authority of that case, the United States Circuit Court, Sixth Circuit, with Judges Lurton, Severens, and Warrington sitting, *decided that an action for the disbarment of an attorney could not rest merely upon the judgment of a court of another jurisdiction, but must be based upon allegation and proof of an actual offense.* In that proceeding the Supreme Court of Ohio had disbarred an attorney for professional misconduct, and a transcript of that action was presented to the federal court, where a motion was made for the entry of a similar order.

*This motion was denied. Later, in a proceeding in which specific charges were alleged and proved, the attorney in question was disbarred.* See Thatcher v. United States [6 Cir.], 212 F. 801, 129 C.C.A. 255.

"When we consider the question from the standpoint of pure reason and sound public policy, the correctness of the conclusion which we have reached in this case is apparent. In respect to the punishment of crimes, the imposition of penalties and in matters of disqualification of attorneys each state acts within its own territorial limits, and the federal government within its own sphere. What is deemed an offense or misconduct in one jurisdiction may not be considered as an offense or misconduct in another jurisdiction. A felony in one state may not be a crime at all, or may be only a misdemeanor, in another state. Violations of the law are often only technical, and involve no moral turpitude. Such offenses may be punished in one jurisdiction by imprisonment in the penitentiary, while in another jurisdiction a fine or short term in the parish or county jail may be deemed sufficient to meet the requirements of the law. Conduct which would be considered sufficient to disbar an attorney in one state or in the federal courts might be deemed insufficient to disbar him in another state, or might not be deemed of such a grave character in that state as to require his disbarment, when an order of suspension would adequately respond to the necessities of the case.

"The authorities, including Dormenon's Case, 1 Mart., O.S., 129, and State v. Stringfellow, 128 La. 463, 54 So. 943, cited by counsel for plaintiff, are appropriate to the merits of this proceeding, but they are not pertinent to the discussion of the soundness, vel non, of the exceptions filed by the defendant.

"Although our ruling in this case may appear to be somewhat technical in its nature, nevertheless, even for so praiseworthy an object as purging the bar of unworthy members, *we do not feel that we would be justified in departing from the regular and orderly method of hearing and determining legal controversies. The defendant interposed his exceptions by way of a preliminary defense, as was his right, and he is entitled to a decision from this court on the merit of his pleas.*

"We do not wish, however, to be understood as laying down the rule that professional misconduct of members of this bar committed beyond the limits of this state may not be investigated and acted upon by this court. We are only holding that in this proceeding we are not justified in entering upon such investigation and taking action thereon.

"For the reasons assigned, the exception of no cause of action is sustained, and plaintiff's *suit is dismissed.*" (Italics ours.)

See, also, In re Ebbs, 150 N.C. 44, 63 S.E. 190, 19 L.R.A.,N.S., 892, 17 Ann. Cas. 592.

In the light of the foregoing authorities, let us analyze the pertinent part of

Section 10 of Article VII of the Constitution: First, it provides that this court shall have "exclusive original jurisdiction *in all disbarment cases* involving *misconduct* of members of the bar," and, second, it grants this Court "power to suspend or disbar under such *rules* as may be *adopted* by the *court*." (Italics ours.)

Article 84 of the Code of Practice states: "Judges having *original jurisdiction* are those before whom suits are brought in the first instance. (Italics ours.)

In Bouvier's Law Dictionary, Rawle's Third Rev., p. 1760, *"Jurisdiction"* is defined as "the authority by which judicial officers take cognizance of and decide causes."

In the case of The Resolute, 168 U.S. 437, 18 S.Ct. 112, 113, 42 L.Ed. 533, the Supreme Court of the United States said: "Jurisdiction is the power to adjudicate a *case* upon the merits, and dispose of it as justice may require." (Italics ours.)

In the Constitution of the United States, the word "case" is used in declaring the extent of judicial power. (Art. III, Sec. 2, Clause 1.)

In La Abra Silver Min. Co. v. United States, 175 U.S. 423, 457, 20 S.Ct. 168, 44 L.Ed. 223, the court, in construing the word "case," stated that if the proceeding involved a right, which, in its nature, is susceptible of judicial determination, it is a *case.*

In Muskrat v. United States, 219 U.S. 346, 31 S.Ct. 250, 253, 55 L.Ed. 246, the court declared:

"It therefore becomes necessary to inquire what is meant by the judicial power thus conferred by the Constitution upon this court, and, with the aid of appropriate legislation, upon the inferior courts of the United States. 'Judicial power,' says Mr. Justice Miller, in his work on the Constitution, 'is the power of a court to decide and pronounce a judgment and carry it into effect between persons and parties who bring a case before it for decision.' Miller, Const. 314.

"As we have already seen, by the express terms of the Constitution, the exercise of the judicial power is limited to 'cases' and 'controversies.' Beyond this it does not extend, and unless it is asserted in a case or controversy within the meaning of the Constitution, the power to exercise it is nowhere conferred.

"What, then, does the Constitution mean in conferring this judicial power with the right to determine 'cases' and 'controversies.' A 'case' was defined by Mr. Chief Justice Marshall as early as the leading case of Marbury v. Madison, 1 Cranch 137, 2 L.Ed. 60, to be a suit instituted according to the regular course of judicial procedure.

"* * * By cases and controversies are intended the claims of litigants brought before the courts for determination by such regular proceedings as are established by law or custom for the protection or enforcement of rights, or the prevention, redress, or punishment of wrongs. Whenever the claim of a party under the Constitution, laws, or treaties of the United States takes such a form that the judicial

power is capable of acting upon it, then it has become a case. The term implies the existence of present or possible adverse parties, whose contentions are submitted to the court for adjudication."

The first part of the constitutional provision in question gives the Supreme Court exclusive original jurisdiction to hear and decide disbarment cases involving misconduct of members of the bar, and the second part thereof confers upon this court the power to suspend or disbar, under its rules, a member of the bar, who, after judicial hearing, is found guilty of misconduct. This means that the Supreme Court shall hear such disbarment cases and the defendant is entitled to have this court decide for itself, from the evidence, whether or not he has committed misconduct warranting his suspension or disbarment. In conferring upon the Supreme Court this jurisdictional power to hear and determine such disbarment cases as a court of first instance, it is clear that the members of the Constitutional Convention did not contemplate that the court adopt rules, which would either delegate or defeat this constitutional grant of authority. In short, it could not adopt a rule which would deprive a defendant, who had been charged with misconduct, of his right to have this court decide his case. If the verdict of the jury and the sentence of the Federal District Court in this instance were either accepted as conclusive evidence that the defendant was guilty of misconduct, or, as establishing a prima facie case of misconduct against him, the rule of the court would thus be given a construction which would clash with the constitutional provision requiring it to decide for itself from the evidence whether or not the member of the bar was guilty of misconduct justifying his suspension or disbarment.

In the case of State v. Woodville, 1926, 161 La. 125, 108 So. 309, the disbarment proceedings were instituted against the defendant for alleged acts of misconduct growing out of and in connection with the institution and prosecution of divorce proceedings in Schwartz v. Schwartz, 158 La. 48, 103 So. 438, in which case this court reviewed, on appeal, the evidence and testimony in the transcript. Although this court had previously considered the facts in the divorce proceedings in the official record filed here, it did not and could not exert its power to suspend or disbar, until the same facts were tendered to it for determination as a court of first instance properly invoking its jurisdiction in the disbarment case. After reviewing and analyzing the evidence, the court suspended the defendant from practicing as an attorney for a period of six months.

A verdict of a jury is nothing more than the opinion and the conclusion of its members reduced to writing. The verdict cannot serve as prima facie proof, or otherwise, of any fact upon which the jury found it. The members of the jury cannot be heard to testify as to the facts upon which they acted in returning the verdict, for such testimony would be hearsay. The law is well-settled that the conviction or the acquittal in a criminal case is inadmissible in a civil action growing out of the same matter.

In Quatray v. Wicker, 16 La.App. 515, 134 So. 313, 316, an ex delicto action for damages the court held:

"The defendant Marchesseau avers in his answer that Wicker, Jr., was convicted of reckless driving and causing personal injury under the state highway traffic statute (Act No. 296 of 1928) in the criminal district court and that he (Marchesseau) was acquitted of the same charge. Statements to this effect were admitted without objection. It is argued that the conviction and acquittal in criminal cases should be considered as evidence by us. The whole question is discussed in Interstate Dry Goods Stores v. Williamson, 91 W.Va. 156, 112 S.E. 301, 31 A.L.R.-261, in which appear many cases maintaining the doctrine that evidence of prior conviction or acquittal is inadmissible in a civil suit.

"See Stone v. United States, 167 U.S. 178, on page 184, 17 S.Ct. 778, 780, 42 L.Ed. 127, in which the Supreme Court said: 'In our opinion, the record of the criminal proceedings in the court in Idaho was not evidence to establish or disprove any of the material facts involved in the civil action.'

"In 3 Orleans App., page 356, Lennon v. Palmer Co., on page 359, this court in commenting on the action of the trial judge in refusing to admit in a civil damage suit, evidence showing an acquittal in a criminal court, and in refusing to admit the introduction of evidence adduced in the criminal trial, said: 'Both rulings are correct; the prosecution was by the City and the present plaintiff had no power to cross examine the witness, and *the judgment of a criminal court has no effect on a civil court, which is charged with the duty and power to determine for itself all the issues arising in a civil suit.*'

"In Jones' Commentaries on Evidence, § 1816, is found the following: 'Although the same fact may be involved in two cases, one civil and the other criminal, the parties are necessarily different, for one action is prosecuted by the individual, the other by the State. Accordingly, by the weight of authority, the judgment in one case is not generally admissible in the other to establish the facts on which it is based.' See, also, Steel v. Cazeaux, 8 Mart., O. S., 318, 13 Am.Dec. 288; Lewis v. Petayvin, 4 Mart., N.S., 4; Pober v. Sterbcow, 14 Orleans App. 164; New Orleans Ry. & Light Co. v. United States Fidelity & Guarantee Co. 145 La. 364, 82 So. 372.

"The only case in this state that we have been able to find that supports defendant's contention is Bankston v. Folks, 38 La. Ann. 267, in which it was held that the verdict in a criminal case was admissible in a civil case but not binding on the civil court. This decision is not in accord with the other cases, supra. [We might say that an examination of the opinion in the case of Bankston v. Folks shows that the statement of the court on this subject was obiter dictum.]

*"We hold that the conviction or acquittal in a criminal case growing out of the same matter or transaction which gives rise to a civil case is not evidence and should not be admitted by the court in a civil case."* (Brackets and italics ours.)

Professor Edward W. Hinton, in his article in the Illinois Law Review—XXVII, page 195 (1932) entitled "Judgment of Conviction; Effect on a Civil Case," stated:

"For the purpose of proving the facts on which it is based the admission of the conviction seems to run counter to both (1) the hearsay rule and (2) the opinion rule. The finding of the jury is obviously nothing more than their conclusion from the testimony produced at the trial. It is clear that the individual jurors would not be admitted to testify to their belief in the guilt of the accused because of their lack of personal knowledge. Their formal verdict would seem to be no better than their present testimony."

A fortiori, if the verdict of acquittal or conviction in a criminal proceeding is inadmissible in a civil action to establish the facts therein to be determined, it cannot serve as the sole basis for a cause or right of action in a disbarment petition, a civil proceeding, where the Constitution requires the court of exclusive original jurisdiction to hear and determine for itself, from the evidence, the question of whether or not misconduct has been proved.

In Interstate Dry Goods Stores v. Williamson, 91 W.Va. 156, 112 S.E. 301, 31 A.L.R. 258, it was stated that where the accused pleaded guilty in a criminal prosecution, the judgment of conviction was admissible in a civil case as an admission of guilt made by the party. But, even in such cases, the plea is not accepted as conclusive. This is in accord with the case of In re Edwards, supra, where, even though the defendant pleaded guilty to embezzlement in the district court, this court regularly tried him in the disbarment proceedings.

It is stated that the court, under its constitutional grant of authority or its inherent power to disbar members of the bar, had the right to adopt the rule in question. It is difficult to comprehend on what theory it could be stated that the court would have the right, under the section and article of the Constitution in question or its inherent powers, to adopt a rule contrary to the provisions of the express constitutional grant of original jurisdiction with restrictions or limitations, which are irreconcilable with the rule. Briefly, as the Constitution clearly places the duty and responsibility solely and only upon the Supreme Court to hear and to decide for itself, from the evidence, whether or not an attorney is guilty of misconduct justifying his suspension or disbarment, the court is therefore powerless to adopt a rule which provides that it may, in its discretion, accept a certified copy of a judgment of conviction of a felony, "without further evidence," in disbarring a member of the bar. Obviously, this court neither has the constitutional nor inherent right to wholly or partially surrender the exclusive original jurisdiction conferred upon it by the Constitution, to determine for itself from the evidence whether or not a member of the bar has acted in such a way as to warrant the court in concluding that he has been guilty of misconduct and, therefore, should be disbarred or suspended. It is conceded that the court cannot accept certified cop-

ies of the verdict of a jury finding the defendant guilty of a felony and the sentence of another tribunal ordering him to be confined to the penitentiary, as conclusive evidence of misconduct, because by so doing, the court would be substituting the opinion of the members of the jury in lieu of its own opinion and thereby surrendering its jurisdiction to hear and determine the case for itself. Now, as the court cannot divest itself of its jurisdiction as a court of first instance to hear and determine the question of misconduct from the evidence and substitute the opinion of the jury for its own, it is, likewise, powerless to partially surrender its jurisdiction by accepting the opinion of the members of the jury to establish a prima facie case against the defendant. If the court has the power, by adopting a rule, to partially surrender its jurisdiction, the court must likewise be held to have the right to completely and wholly surrender its jurisdiction. Unquestionably, the court neither has the constitutional nor inherent power to surrender or delegate its jurisdiction by adopting a rule which would make a certified copy of the verdict or opinion of a jury, showing that the defendant had been found guilty of a felony, as conclusive proof or prima facie proof of his misconduct as a member of the bar. This court has no more right to delegate or surrender the jurisdiction which the Constitution has conferred upon it than it has to assume or create jurisdiction in itself where the Constitution has not conferred or withheld it.

In the case of In re Green et al., 1932, 161 Okl. 1, 16 P.2d 582, 585, the defendants, attorneys, had been indicted in the United States District Court for the Eastern District of Oklahoma for conspiracy to defraud the United States Government, growing out of a divorce case, in which they represented an Indian woman, a ward of the Federal Government. They were each convicted and the United States Circuit Court of Appeals of the Eighth Circuit affirmed the verdict holding that the proof amply supported the verdict of the jury. Thereafter, the United States Government instituted civil proceedings against the defendants to recover from them the sum of $20,000, which amount was finally paid. The Board of Governors in a disbarment proceeding made findings of fact and conclusions of law stating that the attorneys had been convicted of a crime in the Federal court involving moral turpitude and under the law it was mandatory that they be disbarred. In remanding the case for further proceedings, the court stated:

"We think the correct rule to apply in reference to a conviction for a felony in the federal court is that there is nothing in said statute (Sec. 4106, C.O.S.1921) which requires that disbarment be mandatory. This court should not be tethered, but should review all proceedings in disbarment matters, and exercise its judgment as to whether there should be a disbarment or suspension."

See, also, In re Platz, 42 Utah 439, 132 P. 390, 392.

In re Dampier, 1928, 46 Idaho 195, 267 P. 452, 453 the defendant lawyer was convicted in the United States Court of Idaho of sending obscene and nonmailable matter through the United States mails. He was sentenced to pay a fine of $1,000 and serve 6 months in the county jail. The Board of Commissioners of the Idaho State Bar ordered that he be disbarred from practicing law because he was convicted of a crime involving moral turpitude and the record of the conviction was conclusive evidence under the State law (C.S. § 6578). The court stated that the record of the conviction was conclusive of the fact that the defendant had been convicted but was "not conclusive that the crime involved moral turpitude; that is a question of law for this court"; that the question of moral turpitude should be gauged by the laws of Idaho and not by the Federal statutes; that the question of what constituted moral turpitude in reference to statutory law varies with the various states and the federal government; that it is incorrect to say that a conviction of felony necessarily involved moral turpitude; that the offense against the law of the United States under which the defendant was convicted and sentenced by the Federal court was not a crime eo nomine under the laws of Idaho; that even if it be conceded that the court had inherent power sufficient to disbar the defendant as he had not acted in his professional capacity but as an individual in violating the Federal statute and had not been charged with misconduct before, a single act of immorality did not affect his professional integrity and was insufficient to justify disbarment; and that as disbarment was so severe, it should not be imposed upon the defendant unless there was no reasonable ground to believe that the imposition of a judgment less severe would not adequately protect the public, the courts, and the profession. The court declined to affirm the judgment of the Board of Commissioners and refused to disbar the attorney. See, also, In re Downs, 1928, 46 Idaho 464, 268 P. 17.

In the case In re Donegan, 1940, 282 N.Y. 285, 26 N.E.2d 260, the attorney's disbarment was sought as a result of his conviction of a felony, after having been indicted, and convicted in the United States District Court for the Southern District of New York, of the crime of conspiracy to use the mails to defraud. 18 U.S.C.A. § 541. The conviction was affirmed by the United States Circuit Court of Appeals of the Second Circuit, United States v. Dilliard, 101 F.2d 829, and the Supreme Court of the United States denied his application for a writ of certiorari. 306 U. S. 635, 59 S.Ct. 484, 83 L.Ed. 1036. The President of the United States refused to pardon him. Under the federal laws, the crime of which he was convicted was made a felony, but the nearest similar crime under the laws of the State of New York was only a misdemeanor.

The Judiciary Law of New York, Sections 88 and 477, provide:

"§ 88. Admission to and removal from practice by appellate division * * *

"3. Whenever any attorney and counsellor-at-law shall be convicted of a felony,

there may be presented to the appellate division of the supreme court a certified or exemplified copy of the judgment of such conviction, and thereupon the name of the person so convicted shall, by order of the court, be stricken from the roll of attorneys.

"4. Upon a reversal of the conviction for felony of an attorney and counsellor-at-law, or pardon by the president of the United States or governor of this state, the appellate division shall have power to vacate or modify such order or disbarment."

"§ 477. Attorney convicted of felony shall cease to be attorney. Any person being an attorney and counsellor-at-law, who shall be convicted of a felony, shall, upon such conviction, cease to be an attorney and counsellor-at-law, or to be competent to practice law as such."

The Appellate Division, First Judicial Department, In re Donegan, 256 App.Div. 1068, 11 N.Y.S.2d 844, which had jurisdiction of the proceeding, acting under its interpretation of the above sections, struck the name of the defendant from the roll of attorneys [282 N.Y. 285, 26 N.E.2d 261] "upon the presentation of exemplified copies of the judgment of conviction and without further hearing upon the ground that it is constrained so to do by subdivision 3 of section 88 of the Judiciary Law," and denied him an appeal from its judgment or order. But, the Court of Appeal, the court of last resort, granted him an appeal, and in reversing the order of the Appellate Division and remanding the case to that Division to be proceeded with in accordance with its opinion, stated that

"Although disbarment is not strictly a punishment for crime, but only the withdrawal of a privilege * * * it cannot be denied that the requirement of automatic and irrevocable disbarment for life provided by the Judiciary Law, is in effect a consequence most severe, and partakes of the nature of punishment. Hence the statute must be interpreted in the light of the fundamental canon that penal statutes must be strictly construed." That the laws of the several states and the United States are not uniform as to what offenses are classified as felonies and as the laws differ with reference to the degree of punishment and moral turpitude, the word "felony" as used in the law in question should be interpreted to mean that the offense for which the attorney was convicted must not only be a felony under the federal law, but also a felony under the state law; and that as the offense for which the defendant was convicted was not made a felony by the laws of the State of New York, he was entitled to a hearing under the State laws and a less severe result. The court finally stated:

"It is urged, however, that subdivision 4 of section 88 of the Judiciary Law, in permitting modification by the Appellate Division in the event of a 'pardon by the president of the United States,' indicates that the Legislature intended that the word 'felony,' as used in subdivision 3 of section 88, include all felonies which are so under the federal law, in addition to those which are felonies under our own statutes. But this contention is completely met by the fact that the reference to presidential

pardon is given meaning by the inclusion of the first of the three categories noted above; nothing in the quoted phrase compels also its extension to acts which are not felonies under the laws of this State. Thus, under the interpretation at which we have arrived, all parts of the statute are given meaning without allowing the automatic operation of these provisions to cover a situation incompatible with a required strict construction."

In the case of State v. Flynn, supra, an exception to the jurisdiction of the court was filed on the ground that the Article of the Constitution in question did not define the word "misconduct". In holding that the Article of the Constitution was self-operating, without the necessity of legislation to give it effect, the court held:

"Moreover, the right to disbar is inherent in a court of competent jurisdiction. *In the absence of restrictive legislation, this right may be exercised as necessity requires.* Thornton, Attys. at Law, § 758, vol. 1, pp. 1167–1169. *The constitutional provision is not restrictive, but is declaratory, of the existence in this court of its power to disbar;* and it may exercise this *power,* where, in a *proper proceeding, any conduct* of an attorney *is shown* to be such as to render him *morally or professionally unfit to discharge* the duties of his office." (Italics ours.)

In State v. Fourchy, 106 La. 743, 31 So. 325, 333, where the Article of the Constitution of 1898 was identical with the one in question here, except that the word "pro-fessional" appeared before the word "misconduct", and where the defendant was indicted in the Criminal District Court for embezzlement growing out of a nonprofessional matter and was convicted, but granted a new trial, the court, through a member who had served as a delegate to the Constitutional Convention of 1898, stated:

"It will be observed that when this constitutional provision was adopted the Act (129) of 1896 was in force, and that, by the terms of that act, jurisdiction is conferred upon the district courts to disbar any attorney at law who 'shall be convicted of any felony, *or* shall be guilty of a gross professional misconduct.' (Italics by the court.) The convention which adopted the constitution might have used the same terms in conferring jurisdiction upon this court, but it did not. And from the language used, no other conclusion can fairly be drawn than that it was the deliberate purpose of that convention to limit the exceptional 'exclusive and original' jurisdiction so conferred to cases of professional misconduct, whilst leaving nonprofessional misconduct to be dealt with in the first instance by the courts of ordinary and general jurisdiction, as provided by the existing laws. There is here presented, therefore, no question of the inherent jurisdiction of a court to purge itself of an unworthy officer, or of a conflict arising therefrom, between legislative and judicial authority, since the jurisdiction specifically invoked by the state, and the only jurisdiction invoked for the purposes of this case, is that which has been conferred upon this court, in plain language, by the constitution which estab-

lished the court itself, which jurisdiction, according to the terms of the grant, does not extend to the matter now under consideration."

On the merits the court refused to disbar the attorney because the alleged embezzlement grew out of a nonprofessional transaction.

The holding of this court in both of the foregoing cases is made clear by considering briefly the history of the law of disbarment in this State.

The general rule is that the power to disbar an attorney is possessed by and inherent in all courts which have authority to admit attorneys to practice, and in the absence of legislation regulating the matter, the question of what acts of misconduct justify disbarment has necessarily been left to the judgment of the court. In the year 1810, the Superior or Supreme Court of the Territory of Orleans, acting under its general authority, disbarred an attorney for having allegedly encouraged the mulattoes of St. Domingo in the massacre of the white population, but the accused later purged himself of the charge and was reinstated to a seat at the bar. Dormenon's Case, 1 Mart., O.S. 129; Id., 2 Mart., O.S. 305. In April, 1812, Louisiana was admitted as a State to the Union and under its first Constitution of that year, and five other Constitutions which preceded the one of 1898, the Supreme Court of the State was vested with appellate jurisdiction only and was powerless to exercise the original jurisdiction or inherent powers to disbar an attorney. This court declined to exercise the original ju-

risdiction conferred upon it by the Legislature of 1813 to suspend notaries public, being of the opinion that the Legislature was without any constitutional right to do so. Pain v. Plicque & LeBeau, 10 La. 304, 318 and Robouam's Heirs v. Robouam's Executor, 12 La. 73, 78. Prior to the Constitution of 1898, the members of the bar could be proceeded against, first, under the Act of March 27, 1823, and also, under the Act of March 22, 1826, and thereafter, under Act 115 of 1855, incorporated in the Revised Statutes of 1870, and later, under Act 129 of 1896. The proceedings under the earlier acts were initiated by complaint before the district court, followed, in proper cases, by criminal information and trial before a jury. In addition to the existing method, Act 129 of 1896 provided a civil proceeding before the district courts with limitations on the powers granted therein to disbar, suspend, or reprimand an attorney convicted of a felony or found guilty of gross professional misconduct. State ex rel. Adams v. Rightor, Judge, 49 La. Ann. 1015, 22 So. 195, Section 85 of the Constitution of 1898 contained the first grant of original jurisdiction to the Supreme Court in disbarment cases. It is an historical fact that at no time prior thereto did the Supreme Court of the State of Louisiana exercise or claim the inherent power to disbar, which it was denied when it was made a court of appellate jurisdiction only by the prior Constitutions. Section 85 of the Constitution of 1898 reads as follows:

"Said court * * * shall have exclusive original jurisdiction in all matters touch-

ing *professional misconduct* of members of the bar, with power to disbar under such *rules* as may be adopted by the court." (Italics ours.) See, also, same provisions in Constitution of 1913, Art. 85.

Although the above provision effected the partial restoration of the inherent power once possessed and exercised by the Superior Court of the Territory of Orleans, it withheld from the Supreme Court of Louisiana the plenary powers exercised by the Territorial Court and restricted the operation of the generally accepted doctrine that the power to admit necessarily included the power to disbar. The uniform jurisprudence and contemporaneous construction show that the court considered that the inherent power was circumscribed by the language of the grant in the Constitution; and that the new provision did not have the effect of removing the impediment to the exercise of an inherent power resulting from the previous denial of original ·jurisdiction, but merely imposed a restricted duty and power. State v. Weber, 141 La. 448, 75 So. 111; In re Borie et al., 166 La. 855, 118 So. 45; State v. Standard Oil Co., 164 La. 334, 113 So. 867.

It is clear that the Constitutional Conventions of 1898, 1913 and 1921, did not confer upon this court the authority to disbar a member of the bar solely on the ground that he was convicted of a felony.

If the members of the Constitutional Convention of 1921 had deemed it advisable, they could have granted to this court plenary power to disbar, or they could have re-established the power con- tained in the Act 129 of 1896, to disbar an attorney should he be convicted of a felony. The Convention adopted neither of these views and the sole and only change made was to eliminate the word "professional" which qualified "misconduct" under Article 85 of the Constitutions of 1898 and 1913. Thus, the power of the court to disbar remains as it was under the Constitutions of 1898 and 1913, except that the misconduct for which an attorney may be disbarred need not be an act in relation to his professional duties. If the court were to accept the findings of another court or of a jury on the question of fact of misconduct vel non, it would thereby yield, relinquish, or delegate its exclusive original jurisdiction to the district courts and to juries where that power was placed prior to the Constitution of 1898. Under the Constitutions of 1898, 1913 and 1921, no jury and no court, except this court, is competent in a disbarment proceeding to hear the evidence and determine facts intended to establish misconduct on the part of an attorney and this court can disbar an attorney only after it has determined for itself from evidence presented in the first instance before it, that the accused has been guilty of misconduct.

For emphasis, we wish to state that our rule gives us the discretion to accept as final and conclusive, without further evidence, the exemplified copy of the final judgment of conviction and it is said this merely establishes a prima facie case of misconduct. But, this court is powerless to adopt a rule which will relieve the court of its duty and responsibility under the

constitutional grant of exclusive and original jurisdiction to hear and determine for itself cases of misconduct of members of the bar, and we are certainly surrendering our judgment, which is to be based on competent evidence, for the opinion of the jury when we do not know on what facts or evidence its opinion is based. Now, if the defendant fails to appear and lets judgment go by default, or if the defendant appears and answers by denying he is guilty of any act or acts involving moral turpitude, but does not offer any evidence, taking the position that it is encumbent upon the Committee to first offer evidence tending to show misconduct before he is legally obligated to offer his evidence to rebut the Committee's evidence, and the court rules that he must do so, but he does not and the Committee then offers the certified copy of the judgment of conviction of a felony, which does not show in any way the facts, but simply designates the name of the offense of which he was convicted, and the court accepts it as establishing a prima facie case, then we would be passing judgment upon the defendant without any evidence of misconduct and without knowing the facts or act or acts of misconduct or moral turpitude involved. This would be holding that this court· has the power to adopt rules, in connection with its main and fundamental grant of authority to hear and decide disbarment cases involving misconduct and impose suspension or disbarment, by which it could relieve itself of the responsibility imposed upon it ·by the Constitution. Furthermore, how could we decide whether to suspend or disbar the defendant when we know nothing of his case except that he was convicted of a felony for an unknown act or acts.

If the court were to accept, under its rule, the verdict of the federal jury as a cause of action and prima facie evidence of the defendant's misconduct in the instant case, the following unusual results would follow: First, if the defendant did not appear or defend the case, the introduction of the certified copies of the judgment of sentence and the verdict of the federal jury would not inform us in any respect whatsoever of what act or acts· of misconduct the defendant had committed ˙ for which the jury found him guilty of using the mails to defraud. In short, we would be disbarring him without even knowing what he had done and without any evidence at all that his act or acts involved moral turpitude. Furthermore, the court would be abandoning its jurisdiction to hear and decide the case by substituting the jury's opinion for its own judgment. Second, if the defendant, did appear and answer, he would have to attack the verdict and the entire proceedings upon which the verdict was based in order to defend himself, because he would not know what particular part thereof the Committee was depending upon to show that he was guilty of misconduct. Third, if the defendant's evidence and testimony in the opinion of the Committee was insufficient to overcome the prima facie case established by the certified copy of the verdict, the defendant, in the event the court agreed with the Committee, would thereby be deprived of an opportunity to cross-examine any of the

jurors who had in legal effect been permitted to give testimony even contrary to the hearsay and opinion rules of evidence. Fourth, the Committee would be relieved of the obligation imposed upon the plaintiff in a civil action of setting forth a cause of action in his petition by narrating the facts therein and thereafter establishing them through competent evidence by a preponderance of proof. Fifth, the Committee would be relieved of the burden of proof which rests upon the plaintiff in every court of original civil jurisdiction, and the defendant would be required to establish his defense before the plaintiff either alleged a cause of action or offered competent evidence to prove a case.

All of the above observations show that such a procedure is contrary to the well-established orderly practice in the trial of civil cases. Certainly, it was not contemplated that the court might adopt rules which would be substantive legislation. The above demonstrates that if the prima facie evidence of misconduct interpretation of the rule is accepted, such would be the case. Cities Service Oil Co. v. Dunlap, 1939, 308 U.S. 208, 60 S.Ct. 201, 84 L.Ed. 196; Moore's Federal Practice, Vol. 1 (1941) 3 years—Cumulative Supplement, page 157. Of course, the rule in question does not state that the copy of the judgment of conviction shall establish a prima facie case for it unequivocally provides that the court may "without further evidence, if in its opinion the case warrants such action, enter an order striking the name of the person so convicted from the roll of attorneys and cancelling his license to practice

law in the State of Louisiana." In other words, if the court in its discretion elected not to hear the testimony or evidence which a defendant attempted to present under his defense, the rule would give the court the plenary power and authority to refuse to permit the introduction of such further evidence and decide the case strictly and solely upon the certified or exemplified copies of such judgment of conviction. This would be making conviction of a felony per se an independent ground of disbarment when the Constitution does not so provide. We have held on a number of occasions that the courts are not empowered to enact laws. State v. Maestri, 199 La. 49, 5 So.2d 499; Meunier v. Bernich, La.App., 170 So. 567, and Ex parte Steckler, 179 La. 410, 154 So. 41. Furthermore, the Constitution forbids either one of the three departments of the government to exercise any power properly belonging to the other. Sections 1 and 2, Article 2, Section 3, Article 7, Constitution of 1921. Surely, the court under its rule-making powers, has no right to amend the Constitution.

It was suggested that if a member of the bar were deprived of his citizenship by a judgment of the Federal court convicting him of a felony, that circumstance alone might be a ground for cancelling his license to practice, because citizenship is a prerequisite for admission to the bar. The answer to that theory is: (1) That these proceedings are not instituted upon any such hypothesis; (2) There appears to be no way of losing citizenship except by expatriation, because the Constitution of the United States provides in Amendment XIV

"all persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside." Thus, it appears that citizens born in the United States remain such until death or voluntary renouncement of their citizenship. Surely, a person convicted of a felony in a Federal court in the State in which he resides does not lose his rights under the Federal Constitution as a citizen, so that his property could be taken without due process of law, or that any other privilege and immunity as a citizen of the United States could be abridged. It does not appear that there is any law of the United States that deprives a citizen of his citizenship upon being convicted of a felony. A person convicted of a felony in this State is deprived of his status as a qualified elector. Losing the privilege of franchise is not equivalent to being deprived of citizenship. The only requirement of citizenship for admission to the bar of Louisiana is as provided in paragraph 4, Section 7, Article XII of the Articles of Incorporation of the Louisiana State Bar Association, "that the applicant must produce satisfactory evidence that he is a citizen of the United States of America and is 21 years of age." See, also, Act 118 of 1910. There is neither any allegation nor suggestion in the petition of disbarment in this case that the defendant is no longer a citizen of the United States.

A cursory examination of the petition shows that the sole and only ground alleged for the disbarment of the defendant was that he had been finally convicted of a fel-

ony in the Federal court. The case is entirely presented on the theory that under our rule final conviction of a felony in the Federal court is made an independent or per se ground of disbarment, without regard to the question of misconduct or moral turpitude. It is also plain that the rule was adopted on that basis. Neither the petition nor our rule can be construed in such a way to cover a misconduct case, because they were both designed and intended to apply to a disbarment case, based upon a final conviction of a felony, as an independent ground therefor. The attempt to interpret the petition as setting forth a cause of action on the ground of misconduct is entirely without merit, because the petition in no way sets forth any act or acts of misconduct. But even if the petition and rule are construed as intended to establish a prima facie case of misconduct an unsurmountable obstacle confronts us. As neither the petition nor the annexed documents show any acts whatsoever that the defendant is said to have committed, constituting misconduct, the court would be at a loss to know what punishment to inflict upon the defendant, because the Constitution grants it the discretion to either suspend or disbar him. It would be impossible for the court to intelligently and justly act unless it required the Committee, contradictorily with the defendant, to produce competent evidence to establish the facts of the case. As the court is ultimately compelled by the Constitution to be informed of the act or acts of misconduct before it can exercise its authority to suspend or disbar the attorney, it is apparent that it was

obligated to have required this to be done in the very beginning of the proceeding.

The defendant in this case is only asking that this court require the Committee to set forth in its petition the specific act or acts of alleged misconduct upon which his disbarment is sought and that it prove those allegations with competent evidence. It is elementary and fundamental that the defendant in a civil case is entitled under the law to require the plaintiff to make such allegations and to adduce such proper proof. The petition of the plaintiff and the documents annexed thereto neither furnish the defendant nor this court with any facts whatsoever, which would inform him or us as to what his alleged misconduct consisted of or was founded upon.

As the exception of no right and no cause of action is primarily predicated on a lack of sufficient allegations of fact in the petition, the exception should be sustained as one of vagueness, with leave to the plaintiff to amend the petition. Reeves v. Globe Indemnity Co., Inc., 185 La. 42, 168 So. 488.

The reasons and authorities set forth in the dissenting opinion in the case of Louisiana State Bar Association v. Mary H. Connolly, La.Sup., 9 So.2d 582, this day decided, are likewise applicable to this case.

It is my view that the exception of no right and no cause of action should be sustained as an exception of vagueness, with leave to the Committee to amend its petition by setting forth the act or acts of misconduct upon which the defendant's disbarment is sought; and that the interpretation

placed by the majority opinion upon Section 12 of Article XIII of the charter of the Louisiana State Bar Association, adopted as a rule of this court, renders it unconstitutional as violative of Section 10 of Article VII of the Constitution of 1921.

For these reasons, I respectfully dissent.

FOURNET, Justice (dissenting).

This is an original proceeding to disbar Richard W. Leche under Section 10 of Article VII of the Constitution of 1921 providing that the Supreme Court "shall have exclusive original jurisdiction in all disbarment cases involving *misconduct* of members of the bar, with the power to suspend or disbar under such rules as may be adopted by the court." (Italics mine.) The matter is now before us on an exception of no cause of action filed to a rule issued against the defendant to show cause why his name should not be stricken from the roll of attorneys and why his license to practice law in this state should not be cancelled.

The basic allegation of the petition is that the defendant "was convicted of a felony in The United States District Court * * * as will appear from the certified copy of the judgment of sentence" attached to the petition, which judgment has become final and the defendant is now serving his sentence thereunder. The petition contains no allegation of misconduct on the part of the defendant, nor does it give any of the facts from which a conclusion might fairly be drawn that the defendant is guilty of misconduct. Consequently, the exception of no cause of action should be maintained, for

under the express mandate of the Constitution we are powerless to proceed in any disbarment matter where any ground other than the misconduct of the member of the bar sought to be disbarred is being urged.

The author of the majority opinion in the Connolly case, La.Sup., 9 So.2d 582,[1] being handed down today, upon which the majority opinion in the instant case is based, has expressly recognized that our jurisdiction in such matters is limited to cases of disbarment involving misconduct, but in maintaining the action of the committee and overruling the defendant's exception of no cause of action, the majority opinion in the Connolly case holds that the conviction of a felony is prima facie evidence 'of misconduct, the burden of overcoming such evidence being placed upon the defendant.

Until the adoption of the Constitution of 1898—wherein this court was given "exclusive original jurisdiction in all matters touching *professional* misconduct of members of the bar, with power to disbar under such rules as may be adopted by the court" (Article 85 of the Constitution of 1898) (Italics mine.)—the court only had appellate jurisdiction, as in all other cases. See State v. Fourchy, 106 La. 743, 31 So. 325. This article was reproduced under the same number in the Constitution of 1913. The Constitution of 1921 extended the jurisdiction of the court to include "all disbarment cases involving *misconduct* of members of the bar, with the power to suspend or disbar under such rules as may be adopted by the court." Section 10 of Article VII. (Italics mine.)

Pursuant to the authority given the court in this article, the Supreme Court incorporated under its Rule No. XVIII the procedure to be followed in disbarment cases. In Section 7 of this rule it is provided that "The practice before the commissioner [appointed under Section 4 of Rule XVIII to hear the evidence in the case] shall conform as near as may be to the procedure in trials of civil suits before the district courts of this state, *except as otherwise herein provided,*" this exception being, as provided in Section 9, "Whenever any member of the bar shall be convicted of a felony and such conviction shall be final there may be presented to the court a certified or exemplified copy of the judgment of such conviction, and thereupon the court may, without further evidence, if in its opinion the case warrants such action, enter an order striking the name of the person so convicted from the roll of attorneys and cancelling his license to practice law in the State of Louisiana." (Italics and brackets mine.)

The majority opinion in the Connolly case is based on the false premise that while the grant of jurisdiction given this court under Section 10 of Article VII of the Constitution of 1921 in disbarment cases "must be adjudged to be limited to cases of disbarment involving misconduct, [the grant] also contains a recognition of plenary power to suspend or disbar 'under such rules as may be adopted by the court,'" and that the framers of the Constitution of 1921 did not intend "in authorizing us to enact rules in aid of our jurisdiction in disbarment cases involving misconduct, to restrict the right

---

[1] 201 La. 342.

delegated to mere rules of practice and procedure." (Brackets mine.) Or, as expressed in another portion of the opinion, "The limitation of jurisdiction with respect to disbarment proceedings contained in the Constitution refers solely to the grounds for disbarment but the recognition of the power of the court to adopt rules in aid of its jurisdiction is not in anywise restricted."

Such an interpretation, in my opinion, has the effect of creating the anomalous situation of permitting the court by the mere adoption of rules in aid of the limited jurisdiction granted it by the Constitution to so frame its rules as to give itself jurisdiction far beyond the limitation expressly placed upon it by the Constitution itself.

As previously pointed out, Rule XVIII provides that the procedure in disbarment cases shall conform to that in civil suits in the district courts of this state. In adopting this rule, the court did not see fit to define "misconduct," or to state what constitutes "misconduct." Nor did it declare that conviction of a felony would be per se ground for misconduct or prima facie evidence thereof. Of course if this court in adopting Section 9 of Rule XVIII intended to make the conviction of a felony, whether constituting misconduct or not, a ground for disbarment, the same would be unconstitutional. The section would likewise be unconstitutional if the interpretation to be placed thereon is that without any allegation of misconduct this court may disbar an attorney upon the mere presentation of a certified or exemplified copy of a judgment of conviction, for in such cases we would not only be relinquishing to a jury

of laymen our responsibility of passing upon the worthiness of a defendant by accepting, instead of our own, their appreciation of the facts upon which the prosecution of the defendant is based, but, in such instances, we would not even have an opportunity to ascertain just what those facts were, since no allegation in the petition details them. Furthermore, how are we to determine whether a defendant should be disbarred or suspended in a case of this kind. For example, in the instant case, unless we are to be governed by what we have heard and what we have read in the newspapers, we are completely ignorant of the facts upon which the defendant was convicted, since the petition is totally lacking in this respect.

The Connolly case serves its own good example of our dilemma in such instances. In that case the defendant was sentenced to prison, in addition to paying a fine, when she filed a plea of nolo contendere on a charge of evading the payment of income taxes. The jail sentence was suspended by the trial judge upon the payment of the fine and half the cost of the prosecution. With no other allegation in the petition than the fact that the defendant had been convicted of a felony, the Committee on Professional Ethics and Grievances is seeking to have her name stricken from the roll of attorneys and her license to practice law in this state revoked. Unless we are to assume that the judge had some arbitrary reason for suspending the defendant's jail sentence upon the payment of the fine, we have no recourse but to believe that the judge had at his disposal facts which justified the leniency showed her. Whatever these facts

may be, they are unknown to us. Are we to use as a standard the judge's leniency toward the defendant Connolly when judgment is passed on her in this court, showing her leniency on the strength of this alone, without any knowledge of the facts of the case? Or are we to require the defendant to produce such facts for us? The fallacy of such procedure is apparent. Suppose the defendant either makes no defense or permits the judgment to go against him by default, if the court is undecided as to whether the defendant should be suspended or disbarred, what then would be our procedure? In such cases, we could not compel the committee to produce the facts which gave rise to the prosecution and conviction, for it is hornbook law that no evidence can be introduced beyond the pleadings in civil suits and there is no allegation in the petition under which the evidence can be produced.

It is my opinion, therefore, that in all cases where the Committee on Professional Ethics and Grievances of the Louisiana State Bar Association seeks to disbar an attorney, all of the acts of misconduct of the member sought to be disbarred should be alleged, whether the same constitute a felony of which the member has been convicted or not, in order that the defendant may be fairly apprised of the issues he will have to meet so that he may prepare his defense thereto. This has been the interpretation placed on Section 9 of Rule No. XVIII of this court by all previous committees handling such matters from the time this

rule was adopted in 1926, and I see no reason to depart therefrom at this late date.

For these reasons, I respectfully dissent from the majority opinion in this case.